DIME BANK OF LANSFORD, PA., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39712.    Promulgated July 18, 1930.

*M. M. Marcus, Esq.*, and *W. D. Lewis, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

BLACK: The burden of proof in this case is upon the petitioner to show that the respondent erred in his determination. It was the contention of petitioner in its original petition that it purchased the deposit accounts of John Shigo for $20,000, and that as part of the transaction Shigo " delivered over the accounts of his depositors and personally attended to the transfer of his depositors' accounts into the bank of your petitioner."

At the hearing petitioner practically abandoned its position as alleged in its petition, and contended that instead of purchasing Shigo's depositors' accounts and good will, it had employed Shigo to render services to it as a solicitor to influence his depositors to transfer their deposit accounts to petitioner's bank, and to solicit others, particularly those of foreign birth, to open accounts with petitioner, and that he was paid the sum of $10,000 for his services as soliciting agent and not as purchase price of the accounts. It was within the power of petitioner to introduce in evidence the contract between petitioner and Shigo showing the exact nature of the transaction, but this was not done, nor was any evidence introduced to show its terms beyond the mere statement that Shigo was to solicit new business and influence his old depositors. It is not probable that in a transaction of this character and importance between banking institutions, terms were not fully agreed upon.

We think it clear from the pleadings and the evidence that the agreement was that Shigo cease business and turn over his deposits and accounts to the petitioner and agree to influence, advise and persuade his customers to consent thereto and continue their new relationship with petitioner for a consideration of $20,000, of which $10,000 was paid in 1925 and $10,000 in 1926. Whatever services Shigo performed in this respect were to aid in the performance of

the main obligation resting on him to perform his part of the contract, viz., to transfer the accounts and deposits of his customers and his good will. There is no material difference between this case and that of *Union National Bank*, 18 B. T. A. 468, where one bank purchased the accounts and assets of another and assumed its liabilities and paid the vendor $35,000 bonus, and it was held that such an expenditure was a capital expenditure in the nature of a purchase of valuable custom or good will and not an ordinary and necessary business expense deductible in the taxable year. To the same effect is *Washington State Bank*, 20 B. T. A. 33; *Bank of Terrebonne & Savings Bank*, 19 B. T. A. 1286.

A similar question arose in *Pevely Dairy Co.*, 1 B. T. A. 385, where one dairy company bought out another and provisions were inserted in the contract binding the vendor to use its best efforts to induce its customers to become and continue customers of the purchaser and it was held that expenditures thereunder were capital expenditures.

In *Public Opinion Publishing Co.*, 6 B. T. A. 1255, we held that expenditures made to maintain a subscription list of a newspaper were ordinary expenses, but that those to increase it were not. In *Commercial National Insurance Co.*, 12 B. T. A. 655, we held that expenditures for increase in an insurance policy list were capital expenditures, and in *Liberty Insurance Bank*, 14 B. T. A. 1428, that expenses incident to an advertising campaign for new savings depositors was a capital expenditure.

Under the authority of the cases above cited, the action of the respondent is affirmed.

*Judgment will be entered for the respondent.*