EAGLE PASS & PIEDRAS NEGRAS BRIDGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42460.   Promulgated August 28, 1931.

*Marion Butler, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

OPINION.

LOVE: Petitioner contends that the expenditure of $18,750 made by it in connection with the acquisition of the Muzquiz franchise and the agreement on the part of himself and his associates to close and remove the pontoon bridge constituted an ordinary and neces- sary business expense and is, therefore, an allowable deduction in determining its net income for the taxable year. The respondent contends that the amount constitutes a capital expenditure and accordingly is not an allowable deduction.

Petitioner urges that it had everything desirable or necessary to build and operate a permanent toll bridge; that the Muzquiz fran-

chise was not legal and had no value; that Muzquiz did not have any legal right to operate either a free bridge or a toll bridge; that he was a blackmailer and had constructed the pontoon bridge across the river above petitioner's bridge and opened the same to free use for the purpose of damaging the petitioner, and forcing it to pay him money to desist from the operation of the free bridge. Petitioner also insists that the real and only purpose it had in making payment of the $18,750 was to stop the operation of a free bridge and to remove the danger of having such bridge swept down against its bridge and destroying it, as was actually done.

The facts show that at the time petitioner and its associated Mexican corporaton acquired the Muzquiz franchise and the promise of removal of the pontoon bridge, they had obtained approval of the Governments of the United States and Mexico for the construction of a new permanent bridge. The franchise held by petitioner's associated Mexican corporation had only until June, 1937, to run, or a remaining life of a little more than eleven years. At the expiration of this time the Mexican Government was to take over the bridge at two-thirds of its value or probably, as stated in petitioner's brief, renew the franchise. We think it is clear from the facts that petitioner and its associated corporation were in a position to proceed with the construction of the permanent bridge when they acquired the Muzquiz franchise.

That the Muzquiz franchise was not legal and was without value is not supported by the record. It is true the record does not show that Muzquiz or his associates had obtained the approval of the Government of the United States for the construction of a permanent bridge, but that fact alone does not establish the lack of legality or the lack of value of the franchise.

With respect to the contention that Muzquiz did not have any legal right to operate either a free bridge or a toll bridge, the record indicates that neither petitioner nor Muzquiz and his associates had submitted the plans and specifications for the bridges they were maintaining across the river to the Chief of Engineers and the Secretary of War, as required by the laws of the United States. What the legal rights of the respective parties were is not determinable from the evidence before us. However, the record indicates that petitioner was unable to enjoin the operation of the Muzquiz bridge by means of legal proceedings instituted by petitioner for that purpose.

What the motive of Muzquiz and his associates was in constructing the pontoon bridge and opening it for use free of tolls, the record does not show. It does show, however, that Muzquiz obtained his franchise at about the same time petitioner and its associated corporation decided to construct a permanent bridge. Which was first

is not clear. It may be that the pontoon bridge was constructed and opened to use free of tolls for the purpose of deterring petitioner and its associated corporation from going forward with their plans for constructing a permanent bridge and also to render the operation of their temporary bridge a profitless undertaking. But, whatever the purpose was, it constituted a serious challenge to the future business of petitioner and its associated corporation—in fact, so serious that they were willing to pay $37,500 for the Muzquiz franchise, take steps for the cancellation of the old franchise held by petitioner's associated corporation, and proceed under the Muzquiz franchise in constructing the permanent bridge. It was not until after the acquisition of the Muzquiz franchise that the contract for the construction of the permanent bridge was let and the construction thereof begun.

In acquiring the Muzquiz franchise and the promise of removal of the pontoon bridge, petitioner not only eliminated the then existing serious threat to its business arising from the pontoon bridge being open to the public free of tolls, but eliminated any such threat that might arise throughout the remaining life of the franchise or for a period of almost 50 years. The benefit thus acquired by petitioner was not limited to the taxable year here involved, but is to continue throughout the remaining life of the franchise or until the year 1975. In our opinion the benefit so acquired constituted a capital asset. Consequently the amount expended therefor was not an ordinary and necessary business expense, but an investment of capital, and as such is not an allowable deduction.

While petitioner is not entitled to deduct in 1926 the amount of $18,750 expended by it in connection with the Muzquiz franchise, we think it is entitled to exhaust this amount ratably over the unexpired life of the franchise remaining at the time it was acquired from Muzquiz and his associates. In redetermining the deficiency, a deduction computed accordingly should be allowed from petitioner's gross income. See *Christensen Machine Co.*, 18 B. T. A. 256; *News Leader Co.*, 18 B. T. A. 1212.

Petitioner contends that in addition to the $18,750 having been paid to stop the operation of a free bridge, it was also paid for the purpose of removing the danger of having its temporary bridge destroyed by the pontoon bridge sweeping down against it in time of high water. However, no attempt was made by petitioner to segregate the portion of the payment applicable to either purpose, and we are unable to make such a segregation from the evidence before us.

Even if a portion of the expenditure in connection with the Muzquiz franchise could be allocated and attributed to the purpose of protecting petitioner's bridge from the danger of the pontoon bridge

above it, we think that such portion would be a capital item. It was a benefit of a permanent character; it remained over the life of the franchise and was not in the nature of an ordinary and necessary expense of carrying on a trade or business during the taxable year. Any portion of the expenditure for this purpose should be spread over the period of the benefits obtained; it is in the nature of a payment in one year for an asset having a life of many years.

While the evidence shows that the temporary bridge of petitioner was destroyed in 1926 by the pontoon bridge washing down against it, no part of the deduction here contended for is claimed to represent the loss resulting from the destruction of petitioner's bridge. So far as we know, the respondent has already allowed as a deduction the amount of any loss sustained by petitioner in that manner.

*Judgment will be entered under Rule 50.*