CLARK THREAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. & P. COATS (R.I.), INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38903, 38904, 47974. Promulgated August 18, 1933.

*Albert L. Hopkins, Esq., Frederic J. Faulks, Esq.,* and *Jay C. Halls, Esq.,* for the petitioners.

*Allin H. Pierce, Esq.,* for the respondent.

1132

1134

OPINION.

*Issue (1)—Amortization of Contract of 1897.*

TRAMMELL: The petitioners contend that the Clark Thread Co. is entitled to a deduction from gross income for each of the taxable years 1923 and 1927 on account of amortization of the contract entered into by and between George A. Clark & Brother (Inc.) and the Clark Thread Co. (and certain of the latter's stockholders) in 1897 in the circumstances detailed under this issue in our findings of fact.

The petitioners claim that the contract constituted a valuable capital asset in the hands of George A. Clark & Brother (Inc.) from the date of its execution in 1897, subject to exhaustion in the process of earning income, and that the Clark Thread Co. acquired the contract in 1917. Petitioners concede that, coincident with its acquisition by the Clark Thread Co. and the dissolution of the other

1142

principal party thereto in 1917, the contract was terminated and ceased to exist, but contend that the Clark Thread Co. thereby acquired a valuable property right in the nature of an exhaustible capital asset, namely, the right to receive thereafter the entire amount of its net earnings for the remaining period of the original life of the contract.

The petitioners argue that the Clark Thread Co. is entitled to deductions in the taxable years on account of amortization or exhaustion of the capital asset so acquired in 1917, and propose as the proper basis for the computation of such deductions, first, the fair market value of the contract at March 1, 1913, alleged to have been $23,000,000, spread over 28⅓ years, the remaining period of life of the contract on that date, which would give an annual amount in excess of $800,000. This basis is contended for on the theory that because George A. Clark & Brother (Inc.) owned 100 percent of the stock of the Clark Thread Co. in 1917 and the two corporations thus were affiliated at that time, the Clark Thread Co. is entitled to the same basis as George A. Clark & Brother (Inc.) would be entitled to if the contract had remained in its possession.

In the alternative, the petitioners argue that if the March 1, 1913, value is not the proper basis for computing these deductions, then the Clark Thread Co. is entitled to deductions on the basis of the fair market value in 1917, said to have been $21,000,000, spread over the period of 24 years from July 1, 1917, to July 1, 1941, the date on which the contract would have expired by its own terms. Another alternative basis suggested by the petitioners is the cost to the Clark Thread Co. of acquiring the contract in 1917, alleged to have been $8,953,589.39.

Respondent's contentions, in substance, are that the contract was an intercompany transaction between two subsidiary members of an affiliated group of corporations; that it represented nothing more than the method by which, or channel through which, the parent corporation in Scotland elected to take the profits of its American subsidiaries, the Clark Thread Co. and George A. Clark & Brother (Inc.); and that in any event the contract did not constitute a depreciable capital asset which was being used in the business of the Clark Thread Co. in either of the tax years, since the capital value of the contract, if it ever had any such value, was destroyed or disappeared on December 3, 1897, on which date George A. Clark & Brother (Inc.) became the record owner of all the shares of capital stock of the Clark Thread Co.

Before discussing the proper basis for the computation of the amortization deductions claimed by the petitioners, we will consider first the question which is of primary importance here, namely,

whether or not the Clark Thread Co. acquired a capital asset in 1917 which is subject to amortization deductions. If that company and George A. Clark & Brother (Inc.) were in fact affiliated on May 19, 1897, when the contract in controversy was executed by them, then the contract must be regarded for tax purposes as an intercompany transaction, which did not result in the acquisition of a depreciable asset by the latter corporation. If the contract was not a depreciable capital asset in the hands of George A. Clark & Brother (Inc.) at March 1, 1913, or July 1, 1917, then the Clark Thread Co. is not entitled to amortization deductions on the basis of the fair market value of the contract at either of those dates, or on any other basis.

If the two corporations mentioned were subsidiary members of an affiliated group when the contract was executed, the net worth of that group was neither increased nor diminished by their agreement. The contract, then, would represent merely an intercompany transaction by which the net earnings of the one were shifted to the other. Nothing of value was added thereby to the assets of the affiliated group. Cf. *Burnet* v. *Aluminum Goods Mfg. Co.*, 287 U.S. 544, and for a discussion of the nature of intercompany transactions see opinion of the circuit court in *Aluminum Goods Mfg. Co.* v. *Commissioner*, 56 Fed. (2d) 568, affirmed by the decision of the Supreme Court above cited. If the corporations were not affiliated when the contract was signed, but were independent corporations dealing at arm's length, a different conclusion might be reached.

The record contains much significant information respecting the relationship of the contracting corporations, both prior and subsequent to May 1897. The Clark Thread Co. was incorporated in 1865, and for many years prior to 1897 its products were sold by George A. Clark & Brother, a partnership. The partnership was incorporated under the same name on May 18, 1897, and on the next day, May 19, 1897, the contract which is the subject matter of the claimed deductions was executed by the two corporations.

All the capital stock of the new corporation, George A. Clark & Brother (Inc.), was acquired by Clark & Co., Ltd., of Paisley, Scotland. The principal stockholders of the Clark Thread Co. at that time, and the number of shares held by each, were as follows: Stewart Clark of Paisley, Scotland, 1,300 shares; James Clark, 1,280 shares; William Clark, 1,208 shares; John Clark, 1,040 shares; James and John Clark, trustees, 800 shares; J. William Clark, individually and as trustee, 300 shares; William Campbell Clark, 50 shares; Robert Brown Symington, 50 shares, and Robert Cumming, 100 shares; total, 6,128 shares out of a total of 7,500 shares, or more than 80 percent of the then issued and outstanding capital stock. The individuals named were also shareholders or officers of Clark

& Co., Ltd., of Paisley, Scotland, which became the sole stockholder
of George A. Clark & Brother (Inc.), the other party to the contract
in question.

It is to be noted that the partnership of George A. Clark &
Brother, which was the sole selling agent of the Clark Thread Co.,
prior to May 18, 1897, was composed of the following members, all
of whom were stockholders of the Clark Thread Co.: Stewart Clark,
of Paisley, Scotland; William Clark, of London, England, and
Robert Brown Symington and Robert Cumming, of Newark, New
Jersey.

It is also shown by the record that Stewart Clark, of Paisley,
Scotland, who was the largest individual stockholder of the Clark
Thread Co., was an executive or managing director of Clark & Co.,
Ltd. (the sole stockholder of George A. Clark & Brother (Inc.)),
and a member of the former partnership of George A. Clark &
Brother. William Campbell Clark was the president of George A.
Clark & Brother (Inc.) and a stockholder and vice president of the
Clark Thread Co. Robert Brown Symington was a stockholder and
secretary of the Clark Thread Co.; he was also secretary of George
A. Clark & Brother (Inc.) and was a member of the former
partnership of George A. Clark & Brother.

From the foregoing facts it appears that in May 1897, and for
many years prior thereto, at least 80 percent, and perhaps a much
larger percentage, of the capital stock of the Clark Thread Co. was
owned and held by the stockholders of Clark & Co., Ltd., of Scot-
land, which subsequently became the sole stockholder of George A.
Clark & Brother (Inc.). In the light of those facts, we can not
assume that the Clark Thread Co. and George A. Clark & Brother
(Inc.) were independent corporations acting at arm's length when
the contract of May 19, 1897, was executed. We can not escape the
conclusion that they were subsidiary corporations of a closely related
group.

Upon completion of the reorganization of 1897, of which the con-
tract in question was an integral part, the status of the corporations
was not materially changed. They remained subsidiaries of the
same affiliated group. The record ownership of the stock of the
Clark Thread Co. was merely changed from the former individual
stockholders, who were shareholders of Clark & Co., Ltd., of Scot-
land, to George A. Clark & Brother (Inc.), all of whose stock was
owned by the same Scottish corporation.

Whatever may have been the relationship of the contracting cor-
porations on May 19, 1897, it is conceded that they became affiliated
on December 3, 1897, when George A. Clark & Brother (Inc.) ac-
quired 100 percent of the capital stock of the Clark Thread Co.,

and that such status continued from that date to the year 1917. In any event, then, if these corporations were not affiliated on May 19, 1897, it is apparent that this contract between two subsidiaries of an affiliated group on and after December 3, 1897, conferred no benefits upon either member any more than either would have had without such contract. Without the contract, one corporation might have permitted any proportion of its profits it saw fit to be transferred to the other without any effect upon the enterprise. It was like taking money from one pocket and putting it in another. Because the two corporations by contract did, and continued to do, what might as well have been done without it, that is, shift profits from one to the other, does not give rise to an exhaustible asset. These two corporations by virtue of the contract brought into the business enterprise, consisting of the affiliated group, nothing in the way of capital asset values which the group would not have possessed if the contract had not been in existence. Therefore, if the contract ever had any value as a capital asset in the hands of George A. Clark & Brother (Inc.) prior to December 3, 1897, we think there is no doubt that such value disappeared on that date.

George A. Clark & Brother (Inc.) thereafter possessed no rights under the contract which it could not have exercised by reason of its ownership of all of the capital stock of the Clark Thread Co. Indeed, its ownership of that stock gave it powers and rights greatly in excess of those conferred by the contract. Any time after December 3, 1897, George A. Clark & Brother (Inc.) could have caused the Clark Thread Co. to cancel the contract, or to execute a new contract on such terms and conditions as it pleased. It could have appointed itself the sole selling agent of the Clark Thread Co. and could have taken not only 90 percent of the earnings of its subsidiary, but could have taken all of its earnings either under the provisions of the contract, or as dividends, or a portion of the earnings by both methods. It could have canceled the contract in question without consulting the Clark Thread Co., and there would have been none who could make legal objection.

The fact that after December 3, 1897, George A. Clark & Brother (Inc.) elected to continue the contract in effect and to take approximately 90 percent of the net earnings of the Clark Thread Co. under the provisions of the contract, and the balance of its earnings as dividends, is unimportant so far as attaching value to the contract as a capital asset.

But the petitioners insist that nevertheless George A. Clark & Brother (Inc.) did continue the contract in force and effect from 1897 to 1917; that it was a valuable capital asset because it produced a net profit to said corporation of more than $2,000,000 annually;

and that George A. Clark & Brother (Inc.) could have sold the contract for many millions of dollars. We are not impressed by this argument. It is plain that George A. Clark & Brother (Inc.) could not have sold this contract without parting with its right as sole stockholder to receive approximately 90 percent of the earnings of the Clark Thread Co., and if the contract had not been in existence the sole stockholder could have sold its right to such earnings for as large a consideration as it could have gotten for the contract.

If George A. Clark & Brother (Inc.) subsequent to 1897 had in fact sold the contract to a third party, and the purchaser were before us claiming deductions for amortization of the contract, a different situation would be presented. But here we are dealing with a claim which is allowable only on the theory that the contract in question constituted an exhaustible capital asset in the hands of a parent corporation, by means of which contract the parent corporation took from its wholly owned subsidiary approximately 90 percent of the subsidiary's net annual earnings by causing the subsidiary to sell its output to the parent at cost plus approximately 10 percent of its earnings. In taking under the contract the greater portion of the subsidiary's earnings George A. Clark & Brother (Inc.) reduced to that extent the amount of net earnings available for distribution to it as dividends. In these circumstances, the allowance of deductions for amortization of the contract would amount substantially to amortization of the right of the sole stockholder to receive the net income of its corporation.

The right of a stockholder to receive as dividends the net earnings of the corporation whose stock he owns is a valuable property right, but it represents to the stockholder income derived from the investment of capital in the corporation's stock; it is not a capital asset which may be amortized.

In *Walter E. Kramer, Executor,* 27 B.T.A. 1043, Kramer and Schnadig, who were the sole stockholders of the Pullman Couch Co., caused that corporation to assign and transfer to them its right to receive certain patent royalties. The petitioners contended that they thereby acquired valuable contractual rights upon the basis of which they were entitled to deductions for exhaustion. In our opinion, we said:

However, they (Kramer and Schnadig) were already entitled to receive those royalties from the corporation as dividends on their stock. Instead of permitting the corporation to receive the royalties and then pay the same over to them in the form of dividends, they caused the corporation to assign the royalties to them directly. * * * Under these circumstances, the so-called "contractual rights" of the petitioners to receive the corporation's royalties did not, in our opinion, give rise to a capital asset in respect of which amortization or exhaustion deductions are allowable. * * * The right to

receive dividends does not constitute a capital asset which may be made the subject of amortization deductions.

On principle, the instant case, we think, is not distinguishable in any material respect from the one above cited. There, the two stockholders of the couch company by a written contract caused the corporation to assign and transfer to them its right to receive income which would otherwise have been available for distribution to them as dividends. Here, George A. Clark & Brother (Inc.), the sole stockholder of the Clark Thread Co., on and after December 3, 1897, by means of a written contract took from its subsidiary approximately 90 percent of its earnings which otherwise would have been received by the subsidiary and distributed to the sole stockholder as dividends. The fact that George A. Clark & Brother (Inc.) took the profits which otherwise would have been received by its subsidiary in excess of the stipulated annual amount, by causing the subsidiary to turn over its products at cost, plus said annual amount, we think is not controlling. The method selected by the parties in the instant case deprived the subsidiary of income which, except for the contract, would have been eventually distributed to its sole stockholder in dividends, quite as effectively as did the contract in the *Kramer* case. And as we held there, so must we hold here, that the right of a sole stockholder to receive the income of his corporation as dividends can not by contract be converted into a capital asset which may be made the subject of amortization deductions merely because the stockholder elects to take such income directly under the terms of a contract by which the corporation is required to sell its products to the stockholder at cost.

For the reasons stated, it is our opinion that George A. Clark & Brother (Inc.), upon execution of the contract in question, did not acquire an exhaustible capital asset, and was not entitled to amortization deductions on the basis of the value at March 1, 1913, nor July 1, 1917. It follows that there is no basis for the allowance of amortization deductions to the Clark Thread Co., and it is unnecessary for us to discuss what would be the proper basis for computing such deductions if they were allowable.

The same conclusion may be reached on another ground. The precise question for decision here is whether or not the Clark Thread Co. during the taxable years 1923 and 1927 possessed an exhaustible capital asset upon which it is entitled to amortization deductions. The events which transpired in the prior years, particularly the years 1897 and 1917, are pertinent only in so far as they throw light upon this issue.

It is significant that the termination of the contract between the Clark Thread Co. and George A. Clark & Brother (Inc.) resulted from the dissolution of the latter corporation on July 1, 1917, and

not from any action on the part of the Clark Thread Co., which did not acquire the assets and assume the liabilities of its former stockholder until November 17, 1917. Obviously, we think, the contract by its very nature and terms was not transferable, and as far as shown, no other person, individual or corporate, succeeded to any of the rights of George A. Clark & Brother (Inc.) thereunder. Whatever benefits, if any, flowed to the Clark Thread Co. were merely incidental to the termination of the contract by reason of the dissolution of the other principal corporate party.

These circumstances, in our opinion, could not and did not give rise to the acquisition of an exhaustible capital asset by the Clark Thread Co. The net result to the surviving company was only to relieve it of a burdensome contract which was in the nature of a continuing liability. Under the terms of that contract the thread company was bound to turn over its entire manufactured output to its sole stockholder at cost, plus an amount which in fact equaled only about 10 percent of its potential annual earnings. Upon termination of the contract on July 1, 1917, the Clark Thread Co. was enabled thereafter to receive the full amount of its earnings, but the termination of a disadvantageous contract does not result in the acquisition of a capital asset. We conclude, therefore, that during the tax years the Clark Thread Co. did not possess a capital asset upon the basis of which it is entitled to the amortization deductions claimed.

For all the reasons hereinabove indicated, the action of the respondent on the first issue is approved.

### *Issue (2)—Amounts Paid for Discontinuance of Competitive Trade Brands.*

In 1927 the Clark Thread Co. paid to the Blodgett & Orswell Co., a competitor, the sum of $500,000 and to its attorney the sum of $25,000, as consideration for the discontinuance of the sale of thread by the latter company under the name of " John J. Clark." The detailed circumstances of the transaction and the incidents leading up thereto are fully set out in our findings of fact. The petitioners claim they are entitled to deduct the aggregate amount of $525,000 from gross income for 1927 as a business expense, while the respondent contends that the amount represents a capital expenditure.

The evidence clearly establishes, we think, that the amount was paid by the Clark Thread Co. for the sole purpose of suppressing a competitive trade brand and thereby eliminating competition. It is also obvious that the Clark Thread Co., after mature consideration, believed that the benefits to be derived by it were worth at least the

amount of money paid out. Those benefits were not of a temporary nature, to be enjoyed only during the year 1927, but over an indefinite period of many years, and the whole cost thereof should not, therefore, be charged against income for the year 1927. Such benefits are in the nature of an intangible capital asset, and the amount paid therefor is a capital expenditure, not a deductible expense.

Where the benefits accrue for a limited and definite term of years, the value of the asset is exhausted ratably by the passage of time and an aliquot part of the cost is allowed as a deduction on account of such exhaustion for each year of the period, but where, as here, the benefits derived are permanent or of indefinite duration, no deduction for exhaustion is allowable. *Press Publishing Co.*, 17 B.T.A 452; affirmed as *Newspaper Printing Co.* v. *Commissioner*, 56 Fed. (2d) 125; *News Leader Co.*, 18 B.T.A. 1212; *Dime Bank of Lansford, Pa.*, 20 B.T.A. 250; *Eitingon-Schild Co.*, 21 B.T.A. 1163, 1181; *Eagle Pass & Piedras Negras Bridge Co.*, 23 B.T.A. 1338.

In *Newspaper Printing Co.* v. *Commissioner*, *supra*, the rule was stated by the court as follows:

* * * The simple question then arises whether the cost of eliminating competition can constitute a loss within the meaning of section 234 (a) (4) of the Revenue Act of 1921 (42 Stat. 255) ; or whether the value of the thing procured, that is, the elimination of competition, is a capital asset to be carried to capital account. That the cost of eliminating competition is a capital asset has been established by a long line of decisions of the Board of Tax Appeals. In this case it appears to be clear that the taxpayer was willing to pay the amount of its claimed loss for the benefits to be derived from the elimination of the two competitors. The value of this intangible asset, which must be presumed to be measured by its cost, should have been credited to the capital account and carried as a capital asset. The fact that businessmen, perhaps of wide experience, were willing to pay out the money in return for the gain, clearly negatives any idea that they contemplated that the gain would be less than the expenditure.

On the second issue, respondent's action is approved.

*Issue (3)—Depreciation on Additions to Plant and Equipment.*

During the fiscal year ended June 30, 1923, the Clark Thread Co. expended the total sum of $1,670,760.67 for additions to its manufacturing plant and equipment. These additions consisted of buildings, water and steam pipes, and various kinds of equipment and machinery, comprising some 15,000 items, the larger part of which was installed during the first half of the fiscal year. The petitioner claimed in its return a deduction for depreciation on these additions in the amount of $8,437.72, which was allowed by the respondent.

The petitioner now contends that the amount claimed and allowed was inadequate, and that it should be allowed a deduction in the amount of $43,234.30 computed on the basis of one half the depre-

ciation sustained on the assets during an entire year. There is no controversy between the parties as to the total cost of the additions in question, the periods of useful life or proper rate of depreciation to be applied, nor the fact that the larger part of such additions was installed during the first half of the fiscal year.

The respondent concedes that in the case of depreciable assets comprising a large number of similar items, under the circumstances disclosed here, it is his customary procedure, as a matter of practical expediency, to determine depreciation on the basis now urged by the petitioner, but contends that there is no statutory authority for such method, and that where in the exercise of discretion he has declined to compute depreciation on that basis, his action should not be disturbed unless the taxpayer offers proof in respect of each item. This view, we think, overlooks the rule that discretion vested in any officer of the Government, either administrative or judicial, may not be exercised in an arbitrary and unreasonable manner to the injury of a taxpayer.

In the light of the facts presented here, it is our opinion that the petitioner is entitled to the depreciation claimed, and we so hold.

### Issue (4)—Profit on Assets Sold in 1923.

During the fiscal year 1923, the petitioner J. & P. Coats (R.I.), Inc. sold certain assets consisting of real estate, with the houses and improvements thereon, and various kinds of machinery which had been discarded and scrapped. In its tax return for that year the petitioner reported a profit from the sale of all of these assets in the amount of $32,911.03, which respondent increased by the amount of $10,522.36 on the ground that the petitioner had not taken into consideration depreciation for the taxable year. The petitioner acquired all of the property involved on January 1, 1913.

At the hearing petitioner offered opinion testimony of two witnesses for the purpose of establishing the value of the land without improvements at March 1, 1913, and the separate value of the houses and improvements. Cost was the same as value, and the value at January 1, 1913, was stated to be the same as at March 1, 1913. On the basis of this testimony the petitioner argues that the difference between the cost of the land, plus the cost of the improvements, less depreciation sustained, and the selling price represents the profits realized from the sale of the real estate, which amount is said to be $2,464.06. Petitioner asserts that the respondent computed the profit from the sale of the real estate in the amount of $18,356.43.

The balance of the profit determined by the respondent is allocated to the machinery which was scrapped and sold during the year, and the amount of profit so determined by the respondent is alleged by

the petitioner to be $31,800.43 on machinery which was sold for $1,784.04. The petitioner contends that the respondent allowed a loss of $6,723.47 on certain items of machinery, and on all the items of machinery computed a net gain of $25,076.96, so that the amount of profit determined by the respondent on the machinery, other than the items on which he allowed the loss, was $31,800.43. The petitioner argues, therefore, that if no cost is allowed as the basis for determining gain or loss, the net gain could not exceed the net proceeds of sale, which amounted to only $1,784.04.

With this last proposition of the petitioner we are, of course, in agreement, but we can not concur in the petitioner's conclusions of fact. Testimony was offered by the petitioner for the purpose of establishing the figures stated, but it is apparent that those amounts represent mere assumptions of the witness, which are not supported by the record; and in that situation, such testimony can not be accepted as proving facts.

It is not disclosed by the record that the respondent computed the profit from the sale of the real estate separately, or that he allowed a loss on the sale of a part of the machinery and determined a profit on the sale of the balance of the machinery. The deficiency letter clearly indicates that the respondent accepted as correct the amount of profit reported by the petitioner on the sale of its assets as a whole, with the single exception that he reduced cost by depreciation sustained in the taxable year in the amount of $10,522.36, which resulted in increasing by that amount the total net gain.

The petitioner does not attack the action of the respondent in determining that additional depreciation as stated was sustained in the tax year and not taken into consideration by the taxpayer in reporting the profit realized from the sale of the assets. The determination of the respondent on this issue is, therefore, approved for lack of evidence to show error.

### Issue (5)—Contributions to Hospitals.

The petitioner J. & P. Coats (R.I.), Inc. during the fiscal year 1923 contributed the sum of $5,000 to a campaign fund of the Memorial Hospital of Pawtucket, and the sum of $1,000 to the building fund of the Notre Dame Hospital of Central Falls, Rhode Island. The petitioner's manufacturing plant was located partly in Pawtucket and partly in Central Falls.

The petitioner had an arrangement with the Memorial Hospital whereby amounts paid annually by it to the hospital entitled its employees to free hospital service up to the amount so contributed. Any additional services were paid for by the petitioner as rendered,

and statements were sent to the petitioner by the hospital from time to time showing the balance of the particular fund remaining unused. The petitioner did not maintain hospital facilities at its plant, which would have been necessary if such facilities had not been otherwise available, and the amounts contributed by the petitioner to hospitals were less than it would have cost it to provide such services. In the light of these facts, the so-called contributions were in no sense charitable or philanthropic, but were actuated by business reasons and resulted in direct business benefits. In our opinion, they constitute allowable deductions from gross income as business expenses. *Franklin Mills*, 7 B.T.A. 1290; *Missouri Pacific R.R. Co.*, 22 B.T.A. 267, 302; *Corning Glass Works*, 37 Fed. (2d) 798.

In respect of the $1,000 paid by the petitioner to the Notre Dame Hospital building fund, the respondent points out that the hospital was not in operation during the tax year, and argues that this amount is therefore not deductible from gross income for the fiscal year 1923. That fact, we think, under the circumstances shown, is not controlling. The amount was in fact paid during the fiscal year 1923 and constituted a business expense deductible from income of that year. The same situation was considered by us in *Sugarland Industries*, 15 B.T.A. 1265, and the amount paid was allowed as a deduction from income of the year in which paid.

The petitioner asserts that it claimed deductions for the entire amount of the hospital contributions in question and that the respondent disallowed its claims in the amount of $3,500; whereas the respondent states that the petitioner claimed only the amount of $3,500, which was disallowed. However that may be, the petitioner is here claiming an additional deduction in the amount of $3,500, which, in our opinion, is allowable. The respondent's action on this issue is reversed.

*Issue (6)—Fee Paid on Account of Increase of Capital Stock.*

During the fiscal year 1923, the petitioner J. & P. Coats (R.I.), Inc. increased its capital stock and on that account paid to the general treasurer of the State of Rhode Island a " fee " in the amount of $4,000. The petitioner claimed a deduction in its return for 1923 of this amount as a tax paid to the State of Rhode Island, which was disallowed by the respondent.

In *Holeproof Hosiery Co.*, 11 B.T.A. 547, we held that a " fee " paid to the State of Wisconsin on an increase of capital stock was deductible as a tax, and in the case of the *Borg & Beck Co.*, 24 B.T.A. 995, we also held that " fees " paid to the State of Illinois on account of increases of capital stock were deductible as taxes. In

those cases we pointed out in some detail the distinction between a fee and a tax, which we think it is unnecessary to repeat here.

In support of his action, the respondent relies upon our decision in *United Gas Improvement Co.*, 25 B.T.A. 1382, in which we held that a so-called " bonus " exacted from corporations by the State of Pennsylvania for the privilege of increasing authorized capital stock was not a tax and did not constitute an allowable deduction in computing net income. That decision was based upon decisions of the courts of Pennsylvania and of the Federal courts sitting in that state, which specifically held that the Pennsylvania capital stock " bonus " was not a tax.

In connection with the present case, there has been called to our attention no decision of the courts of Rhode Island, or of the Federal courts, holding that the " fee " exacted from corporations by the State of Rhode Island on increase of capital stock is not a tax. On the contrary, as distinguished from the Pennsylvania " bonus ", the Rhode Island " fee " appears in all material respects to be similar to the " fees " exacted by the States of Wisconsin and Illinois, which we have held are deductible as taxes.

Following our decisions in *Holeproof Hosiery Co.*, *supra*, and *Borg & Beck Co.*, *supra*, we hold that the " fee " of $4,000 paid by the petitioner to the treasurer of the State of Rhode Island was a tax, and as such is deductible from gross income for the fiscal year 1923, under the provisions of section 234 (a) (3) of the Revenue Act of 1921. Respondent's action on this issue is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*