American Dispenser Co., Inc. v. Commissioner.
American Dispenser Co. v. Commissioner
Docket No. 555-66.
United States Tax Court
T.C. Memo 1967-153; 1967 Tax Ct. Memo LEXIS 107; 26 T.C.M. (CCH) 717; T.C.M. (RIA) 67153; July 19, 1967
Morris W. Primoff, 41 E. 42nd St., New York, N. Y., for the petitioner. Lawrence J. Shongut, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $8,450 in income tax of the petitioner for 1962. The petitioner alleges that the Commissioner erred in disallowing a deduction of $15,000 "representing a loss on the settlement of a controversy" and a deduction of $1,250 representing legal fees incident to that settlement. Findings of Fact The petitioner is a New York corporation with its principal office in New York City. It filed its 1962 Federal income tax return with the director of internal revenue for the district of Manhattan. It used an accrual method of accounting and reporting *108 income. The petitioner has been engaged since 1946 in the profitable business of manufacturing and selling many types of soap dispensers, two of its principal dispensers being known as "Lathurn" and "Powdurn". The patents on those two products had expired a number of years prior to 1962. The names were registered as trademarks. The petitioner learned in 1962 that Continential Machine Corp. of St. Louis, Missouri, which also sold soap dispensers, was manufacturing, in Japan, copies of the petitioner's Lathurn and Powdurn dispensers to sell in the United States at prices less than those at which the petitioner sold its Lathurn and Powdurn. These two products of the petitioner were well and favorably known in the trade, and had been for many years, as leading products of the petitioner. From outward appearances it was difficult to distinguish the two Japanese copies from the similar articles manufactured by the petitioner and the two could easily be confused by customers. The petitioner endeavored to find some way to stop the manufacture and sale of the Japanese imitations and finally, in order to avoid costly litigation, it entered into an agreement with Continental on November 6, 1962 "to *109 settle their controversy". Continental agreed that it would never manufacture or market copies of petitioner's Lathurn or Powdurn and the petitioner agreed to pay Continental $15,000 "in full settlement of their controversy". Both parties carried out that agreement. The stipulated copy of that agreement is incorporated herein by this reference. The parties entered into another agreement on November 6, 1962 to have the petitioner purchase for $10,000 the tools, dies, etc., used to manufacture the Japanese imitations of the Lathurn and Powdurn dispensers. The petitioner accrued that $15,000 in 1962 and also accrued in that year $1,250, a fee due to the lawyer who assisted it in connection with the agreement with Continental relating to the Japanese imitations. The petitioner, on its 1962 return, deducted the $15,000 as "Loss on Settlement of Controversy" and the $1,250 as legal expense. Both amounts were paid as agreed. The benefits to the petitioner under the agreement with Continental for which the petitioner paid $15,000 were not limited to the remainder of 1962 but continued for an undisclosed number of years thereafter. The Commissioner, in determining the deficiency, disallowed *110 both the $15,000 and the $1,250 deductions and explained that they "are not deductible in 1962 under Section 162(a) * * * or any other provision" of the Internal Revenue Code of 1954. Neither the $15,000 paid to Continental nor the $1,250 paid as attorney's fee is deductible from 1962 income under section 162(a) or any other provision of the Internal Revenue Code of 1954. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner's determination is presumed to be correct and the petitioner has the burden of proving by a fair preponderance of the evidence that he erred in that determination. It has failed to sustain that burden. It cites only section 162(a). The $15,000 and the $1,250 became liabilities in 1962 and were eventually paid. However, the evidence does not show that either of those liabilities was an ordinary and necessary expense incurred during 1962 by the petitioner carrying on its trade or business within the meaning of section 162(a) of the Internal Revenue Code of 1954 or was deductible in 1962 under *111 any other provision of the Code. The payment of the $15,000 was stated to be "in full settlement of their controversy". What was this controversy between the petitioner and Continental? It was whether or not Continental would continue to take advantage of the petitioner's well established market for its Lathurns and Powdurns by underselling those products with intentional "look alike" imitations made cheaper in Japan. It is clear that the benefits to the petitioner of the agreement under which the $15,000 was accrued and eventually paid by it were not limited to carrying on its business in 1962 and the $15,000 should not reduce its 1962 income for income tax purposes under section 162(a) or any other provision of the 1954 Code. Those benefits were to and did continue for an indefinite time after 1962 and represented a capital asset rather than an expense or loss for Federal income tax purposes. Cf. J. I. Case Company v. United States, 32 F. Supp. 754; Clark Thread Co. v. Commissioner, 100 F. 2d 257, affirming 28 B.T.A. 1128. One of the important purposes and effects of the agreement in connection with which the $15,000 was paid was to cause *112 Continental to cease manufacturing and selling dispensers which looked like the petitioner's Lathurn and Powdurn. That and any other benefits obtained by the petitioner under the agreement were not limited to the year 1962 but continued thereafter. The decision in regard to the attorney's fee must follow the decision in regard to the $15,000 payment as they were directly related. Decision will be entered for the respondent.