DANSKIN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92048. Filed May 15, 1963

*Sidney Gelfand,* for the petitioner.
*Henry G. Nagel,* for the respondent.

320

BLACK, *Judge:*

## Issue 1. *Trademark Infringement Litigation Expenses*

Petitioner claimed as an ordinary and necessary business expense legal fees paid in connection with a trademark litigation in 1959. On April 28, 1959, petitioner, owner of the registered trademark "Danskin," [1] for hosiery and stockings, brought an action against the user of the trademark "Gamskin," used in association with similar goods, for damages and injunctive relief under the provisions of sections 22, 32(1), 34, 35, 36, and 43(a) of the Trademark Act of 1946.[2] In July 1959, the parties entered into a settlement agreement whereby the user of "Gamskin" agreed to entry of a final decree enjoining it from using "Gamskin" in association with goods related to petitioner's. Respondent contends that the legal expenses incurred by petitioner during this action were capital expenditures, and the claimed deduction was disallowed. Respondent concedes on brief that the legal fees were not incurred to protect petitioner's ownership of the trademark "Danskin." Respondent does contend, however, that the expenses resulted in a long-term benefit to petitioner by removing the possibility of future loss of income through the elimination of the alleged infringement of its trademark and, consequently, that it was a capital outlay. An examination of the record indicates that the question of petitioner's title to the trademark "Danskin" was not involved in the litigation and that the sole question was whether or not the alleged infringing "Gamskin" was so similar to petitioner's trademark when used in association with the respective goods so as to be likely to cause confusion or to deceive purchasers. By the terms of the settlement agreement, petitioner dropped its claim for damages but it did obtain the injunctive relief it originally sought prohibiting the use of the trademark "Gamskin." The question presented here is whether or not the legal fees in the amount of $4,666 paid by petitioner in the litigation were a capital expenditure where petitioner's title to its trademark was not involved in the litigation.

As a general rule, litigation expenses incurred in establishing or defending title to property are capital outlays, *Harris* v. *United States*, 275 F. 2d 238 (C.A. 9, 1960), and it is well established that a trademark is property.[3] On the other hand, litigation expenses incurred in recovering lost income or protecting the right to retain income are deductible as ordinary expenses. The recovery of damages would, of course, be regarded as the recovery of lost income rather than as restitution for impaired capital. In the instant case, however, neither

---

[1] Registr. No. 584,683 dated Jan. 12, 1954.

[2] 15 U.S.C., secs. 1072, 1114(1), 1116, 1117, 1118, and 1125(a).

[3] *Campbell Soup Co.* v. *Armour & Co.,* 175 F. 2d 795 (C.A. 3, 1949), certiorari denied 338 U.S. 847.

of these principles is involved. When petitioner settled its action with the alleged infringer of its trademark, it did not obtain any restitution of profits and, as we said earlier, the validity or title to petitioner's own trademark was not challenged. The registration of the trademark was valid and subsisting and the certificate of registration is prima facie evidence of petitioner's ownership of the trademark "Danskin." [4] The agreement of settlement assured petitioner of an unmolested use of its trademark by the permanent elimination of competition from a confusingly similar trademark.

We have previously found that such an expenditure is in the nature of a capital outlay. In *Aluminum Products Co.*, 24 B.T.A. 420 (1931), we held that an amount expended by the taxpayer in settlement with a competitor concerning rights to the trademark "Lifetime" was an expenditure of a capital nature. We concluded therein:

By obtaining the promise of Doty to discontinue the use of the word "Lifetime" on aluminum cooking utensils the petitioner acquired the right to the unmolested use, so far as Doty was concerned, of the trade-mark "Lifetime" on the aluminum ware manufactured by it. Doty, by abandoning the use of this trade-mark, would no longer be in a position to claim any rights under it, and as for the sale of goods bearing the trade-mark the field was left entirely to the petitioner. Doty was permanently eliminated from the field so far as the use of the trade-mark "Lifetime" was involved. These constituted rights of a substantial value, the benefits from which would be available to the petitioner not only throughout the remaining 20-year period for which the trade-mark was registered, but to any renewal thereof. The acquisition of these rights by the petitioner constituted the perfection of its right to the free use of the trade-mark without interference of any kind from Doty.

In a later case in the District Court, *Sanymetal Products Co., Inc.* v. *Carey*, an unreported case, 52 A.F.T.R. 1735 (N.D. Ohio, 1957), 57-2 U.S.T.C. Par. 9865, the court considered a case closely related to the instant case. In that case the taxpayer, owner of the registered trademark "Sanymetal" for class 12 products, brought suit against the owner of the trademark "Sanimetal" for similar goods seeking an injunction, accounting, and invalidation of the Federal registration of "Sanimetal." The case had been settled by agreement and the question before the District Court was whether or not the legal expenses were capital expenditures. The court concluded:

The issue here is whether that payment and the legal expenses connected with that suit must be considered business expenses or capital expenditures.

\*    \*    \*    \*    \*    \*    \*

In the *Clark* case [100 F. 2d 257], the following statement appears:

"The benefits derived from this right (the right to use the trade name 'Clark') cannot be confined to the year in which it was acquired and, therefore, the cost of acquiring it cannot be charged against income in that year."

This is the true test to be applied in determining whether any given payment is a business expense or a capital expenditure. The rationale of the cases is

---

[4] Sec. 7(b), Trademark Act of 1946, 15 U.S.C., sec. 1057(b).

that if expenditures are made in a lawsuit which relates to the retention of or the right to income previously earned or soon to be earned, the expenditure is considered a business expense. If, however, the lawsuit involves the right to income over an indeterminate period, the expenditures must be treated as capital expenditures. * * *

In applying the *Clark* test to the present case, it becomes apparent that the lack of confusion in the trade had the effect of enhancing the value of the trademark "Sanymetal" and this increased value will remain for an indeterminate period. Therefore, since these disbursements were made for the purpose of securing a right to increased income for an indeterminate period, they must be considered capital expenditures.

In view of the above-cited cases we hold that the trademark litigation expenses were capital outlays and that the deduction was properly disallowed by respondent.

### *Issue 2. Time for Election for Amortization of Expenses*

In view of the above conclusion, it is necessary for us to consider petitioner's alternative contention. Petitioner contends that if we should hold that the litigation expenses are to be capitalized then it can elect to amortize the expenses under the provisions of section 177.[5] Section 177 of the 1954 Code, as amended, provides that the taxpayer may elect to amortize trademark costs and the election "shall be made within the time prescribed by law (including extensions thereof) for filing the return for the taxable year during which the expenditure is paid or incurred." It is apparent that Congress has set forth the specific terms by which an election to amortize trademark expenditures may be made, see Income Tax Regs., sec. 1.177. Petitioner did not make such an election with respect to the legal expenses incurred by it in 1959. Section 177(c) specifically requires the election to be made within the time prescribed by law for filing the return

---

[5] SEC. 177. TRADEMARK AND TRADE NAME EXPENDITURES.

(a) ELECTION TO AMORTIZE.—Any trademark or trade name expenditure paid or incurred during a taxable year beginning after December 31, 1955, may, at the election of the taxpayer (made in accordance with regulations prescribed by the Secretary or his delegate), be treated as a deferred expense. In computing taxable income, all expenditures paid or incurred during the taxable year which are so treated shall be allowed as a deduction ratably over such period of not less than 60 months (beginning with the first month in such taxable year) as may be selected by the taxpayer in making such election. The expenditures so treated are expenditures properly chargeable to capital account for purposes of section 1016(a)(1) (relating to adjustments to basis of property).

(b) TRADEMARK AND TRADE NAME EXPENDITURES DEFINED.—For purposes of subsection (a), the term "trademark or trade name expenditure" means any expenditure which—

(1) is directly connected with the acquisition, protection, expansion, registration (Federal, State, or foreign), or defense of a trademark or trade name;

(2) is chargeable to capital account; and

(3) is not part of the consideration paid for a trademark, trade name, or business.

(c) TIME FOR AND SCOPE OF ELECTION.—The election provided by subsection (a) shall be made within the time prescribed by law (including extensions thereof) for filing the return for the taxable year during which the expenditure is paid or incurred. The period selected by the taxpayer under subsection (a) with respect to the expenditures paid or incurred during the taxable year which are treated as deferred expenses shall be adhered to in computing his taxable income for the taxable year for which the election is made and all subsequent years.

(including extensions thereof) for the taxable year during which the expenditure was paid or incurred. Petitioner made no such election when it filed its income tax return for 1959.

We hold for the respondent as to this issue.

### Issue 3. Bargain Sales

In its income tax return petitioner did not claim any deduction for salaries or wages to Lewis or Robert. However, in its amended petition it has an assignment of error which reads:

(b) The Commissioner has erroneously failed to allow as a deduction additional compensation paid to employees in the amount of $5,450.00.

Petitioner alleges as facts to support its assignment of error (b) the following:

(h) In 1959 the petitioner sold to two of its employees, Robert Erdos and Irving Lewis, 425 shares and 120 shares respectively of its Class "C" stock at a price of $5.00 per share. At the time of sale the value of each share of stock was not less than $15.00 a share.

(i) The petitioner is entitled to deduct as additional compensation $5,450.00 representing the difference between the selling price of the stock, $5.00 per share, and the value of the stock, $15.00 per share, multiplied by 545 shares.

Although petitioner did not claim such deduction on its income tax return for the taxable year 1959 it, of course, has a right to raise this assignment of error. However, it should be remembered that petitioner has the burden of proof to establish that the alleged compensation paid to Lewis and Robert in the form of bargain sales of stock of the petitioner corporation was, in fact, compensation, that personal services were actually rendered by the parties, and that the payments were reasonable in amount. Both Lewis and Robert were employed by Triumph, a corporation closely related to petitioner, at substantial salaries. The facts also show that Triumph was the sole manufacturer, supplier, and distributor of petitioner. The employment of Lewis and Robert by Triumph obviously involved "Danskin" products but this does not establish that they worked for Danskin. Based on a close examination of the record, we do not believe that petitioner has established that either Lewis or Robert were employees of Danskin. In any event, petitioner has not shown that the alleged compensation in the form of bargain sales of stock was reasonable in amount for any work they may have performed nor has it shown that the stock had a fair market value of $15 per share at the time of sale.

It appears to us from the facts presented here that the sales were made to Lewis and Robert in their capacity as shareholders of Danskin. The facts show that the other shareholders of Danskin had increased their holdings by 50 percent which was the exact percentage increase in stock made by Lewis and Robert, cf. *Gould-Mersereau Co.*, 21 B.T.A. 1316 (1931), and *Heil Beauty Supplies* v. *Commissioner*,

199 F. 2d 193 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court.

We hold in favor of the Commissioner on this issue.

*Decision will be entered under Rule 50.*