**DARLINGTON–HARTSVILLE COCA–COLA BOTTLING COMPANY, Inc., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**SPARTANBURG COCA–COLA BOTTLING CO., Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 11664, 11665.

United States Court of Appeals Fourth Circuit.

Argued Feb. 8, 1968.

Decided March 26, 1968.

---

1. Although appellant indicates there was more than one letter wrtiten by Mrs. Jones, the record contains only one.

J. M. Walters, Spartanburg, S. C. and John W. Scott, Jr. Chapel Hill, N. C. (B. E. Geer, Jr., Bernelle Demo, and Geer, Walters & Demo, Spartanburg, S. C., on brief), for appellants.

William A. Friedlander, Attorney, Department of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert H. Solomon, Attorneys, Department of Justice, and John C. Williams, U. S. Atty., and James D. McCoy, III, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Taxpayers, Darlington-Hartsville Coca-Cola Bottling Company, Inc (Darlington) and Spartanburg Coca-Cola Bottling Company (Spartanburg), appeal the District Court's decision that certain payments made by them to the Coca-Cola Company (Coca-Cola) in 1964 were correctly characterized by the Commissioner of Internal Revenue as capital expenditures. We affirm.

In outline the facts are these. The payments were made as part of a plan to eliminate an unwanted middleman in the distribution of Coca-Cola syrup. For many years the middleman, H. D. and J. K. Crosswell, Inc. (Crosswell) had exclusive rights to bottle the syrup as the Coca-Cola beverage in specified areas of South Carolina. Under this agreement, Crosswell bought syrup at a set price per gallon, and was empowered with the approval of Coca-Cola to grant bottling privileges to other (second-line) companies. As Crosswell second-liners, taxpayers were entitled to put up the beverage with syrup from Crosswell. Spartanburg and Darlington gave Crosswell more for this syrup than it had paid Coca-Cola, but Crosswell did almost nothing in dispensing the commodity.

Feeling the pinch of competition, the Coca-Cola Company and taxpayers decided to be rid of Crosswell so they could buy syrup at a lower figure. Under a negotiated plan, Coca-Cola purchased Crosswell's capital stock and liquidated the corporation. Taxpayers then reimbursed Coca-Cola for the stock acquisition, and in exchange were awarded contracts to obtain syrup at a price not dearer than was charged Crosswell.

Taxpayers deducted the amount of reimbursements as ordinary and necessary business expense. Int.Rev.Code of 1954, § 162. With the deduction disallowed, the deficiency assessed and paid, this suit for refund followed.

The District Judge was of the same mind as the Commissioner upon the capital nature of the reimbursement. We concur, and adopt the judge's opinion save in its possible implication that a payment merely to be rid of "burdensome and onerous contracts" is per se a capital layout. Presumably, every such payment would bring a correlative advantage—relief from the burden—but this alone would not turn the money into capital. See Pressed Steel Car Co., 20 T.C. 198

**496**

(1953), acq. 1956–2 Cum.Bull. 1; Cleveland Allerton Hotel v. Commissioner of Internal Revenue, 166 F.2d 805 (6 Cir. 1948).

 What does distinguish a capital expenditure, in this respect, its intendment to produce a positive business benefit whose effects will be reaped in seasons beyond a single year. Richmond Television Corp. v. United States, 345 F.2d 901 (4 Cir. 1965); United States v. Akin, 248 F.2d 742, 744 (10 Cir. 1957); see 4 A. Mertens, Federal Income Taxation § 25.20 (1966). Taxpayers' outlays were designed to procure a less costly Coca-Cola syrup. The contracts thus obtained were of indefinite duration, and were contrived to better the profits over the years to come. For this reason, in addition to the others arrayed by the District Court, each taxpayer's undertaking became a capital investment.

Affirmed.