**GEORATOR CORPORATION, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 73-1187.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1973.

Decided Oct. 2, 1973.

Ann Belanger, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. U. S. Atty. Gen., Meyer Rothwacks and Ernest J. Brown, Attys., Tax Div., U. S. Dept. of Justice, and Brian P. Gettings, U. S. Atty., on brief), for appellant.

Mark P. Friedlander, Arlington, Va. (Harry P. Friedlander, Friedlander, Friedlander & Brooks, Arlington, Va., on brief), for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

This case presents the question whether for federal income tax purposes fees incurred while resisting a petition to cancel registration of a trademark may be deducted annually as an ordinary business expense or must be treated as a capital expenditure.

In 1964 Wincharger Corporation, a subsidiary of Zenith Corporation, filed a petition in the Patent Office to cancel Georator Corporation's (Georator) registration of the trademark "NO-BRUSH" on the ground that the trademark had become the common descriptive name for certain types of electric generators and motors. After four years of litigation the Patent Office dismissed the proceeding because of the petitioner's failure to present any substantial evidence to refute the presumptions afforded the trademark by virtue of its registration.

In the course of defending its trademark registration, Georator incurred legal fees in excess of $18,000. These expenses were deducted annually as ordinary business expenses under Section 162(a) of the Internal Revenue Code, 26 U.S.C. § 162(a). Upon audit the Internal Revenue Service held the legal fees to be capital expenditures and determined an income tax deficiency for the years in question in the amount of $9,967.15. Georator paid the deficiency, petitioned for a refund and upon denial thereof brought suit against the government in the district court to recover the amount paid on the deficiency assessment. The district court agreed with Georator's contention that the legal fees were ordinary business expenses fully deductible in the years incurred and ordered that the deficiency, with interest, be refunded. From that judgment the government has appealed.

█ Our analysis of this question begins with the principle of taxation reflected in Section 162(a) of the Internal Revenue Code that an expenditure securing benefits which are realized and exhausted in the same tax period is fully deductible in that tax period. Conversely, an expenditure securing benefits beyond the taxable year must be capitalized. Darlington-Hartsville Coca-Cola Bot. Co. v. United States, 393 F.2d 494 (4 Cir. 1968); Richmond Television Corporation v. United States, 345 F.2d 901 (4 Cir. 1965).

■ It is clear that an expenditure need not be for a capital asset, as described in Section 1221 of the Code, 26 U.S.C. § 1221, in order to be classified as a capital expenditure. Expenditures for equipment used in a trade or business and qualifying for the depreciation allowances of Section 167 of the Code, 26 U.S.C. § 167, while specifically excluded from the provisions of Section 1221, nonetheless constitute capital expenditures. Nor is it necessary that an expenditure increase the value of an asset in order to be classified as a capital expenditure, as the district court apparently assumed. Costs of defending title to property, although adding nothing to the value of the property, have been held to be capital expenditures. Garrett v. Crenshaw, 196 F.2d 185 (4 Cir. 1952); Bowers v. Lumpkin, 140 F.2d 927 (4 Cir. 1944). It is also clear that Section 263 of the Code, 26 U.S.C. § 263, which disallows deductions for expenditures which increase the value of any property, does not provide a complete or exhaustive list of nondeductible expenditures. Commissioner v. Lincoln Savings & Loan Assn., 403 U.S. 345, 358, 91 S. Ct. 1893, 29 L.Ed.2d 519 (1971).

■ Registration of a trademark in the Patent Office, while not enlarging the common law rights of a trademark, does confer very real benefits upon the holder of such trademark. Those benefits include: (1) constructive notice of the registrant's claim of ownership of the trademark; (2) prima facie evidence of the validity of the registration, of the registrant's ownership of the mark, and of his exclusive right to use the mark in commerce as specified in the certificate; (3) the possibility that, after five years, registration will become incontestible and constitute conclusive evidence of the registrant's right to use the mark; (4) the right to request customs officials to bar the importation of goods bearing infringing trademarks; (5) the right to institute trademark actions in federal courts without regard to diversity of citizenship or the amount in controversy; and (6) treble damage actions against infringing trademarks and other remedies. 15 U.S.C. § 1051 et seq. Registration is effective initially for twenty years, but the possibility of renewal at the end of that time makes a determination of the effective life span impossible. Since the benefits of trademark registration are of indeterminate duration and likely to extend over several tax periods, the costs of registration have been held to be capital expenditures. Duesenberg, Inc. of Delaware, 31 B.T.A. 922 (1934), aff'd on other grounds, 84 F.2d 921 (7 Cir. 1936); see also our discussion of Section 177 of the Internal Revenue Code, 26 U.S.C. § 177, *infra.*

In our view, legal costs incurred resisting cancellation of a trademark registration must be treated in the same manner as the costs of the original registration. Plainly, successful opposition to a cancellation proceeding secures the benefits of registration as much as does the original registration of the trademark. The fact that dismissal of a cancellation petition is not *res judicata* does not alter the fact that the benefits of registration have been protected and preserved at least temporarily. If anything, successful opposition to a vigorous challenge will ordinarily deter all but the frivolous from future attempts at cancellation and, as appellee has noted, it is the realities rather than the formalities which must be given weight in tax litigation. Of significance here is the fact that the benefits of successful opposition to the cancellation petition were likely to extend, and in fact did extend, beyond the tax period in which they were secured.

However, our decision does not depend entirely upon this analysis. Under Section 177 of the Code, 26 U.S.C. § 177, the owner of a trademark may elect to deduct over a period of not less than sixty months "any trademark or trade

name expenditure." The Senate Report [1] accompanying Section 177 stated that

"Under present law, expenditures paid or incurred by smaller companies in connection with trademarks and trade names, such as legal fees, are not deductible but must be capitalized."

In Danskin, Inc. v. Commissioner, 331 F.2d 360 (2 Cir. 1964), in which the legal costs of an infringement action were held to be capital expenditures, the court noted the Congressional desire to effect a measure of equity between large corporations which could deduct the salaries of staff attorneys and smaller corporations which were required to capitalize such legal expenses, but also observed that "if the expenses of trademark infringement litigation were intended by Congress to be classified as ordinary business expenses under section 162(a) of the Code, it would [hardly] have been necessary to provide in section 177 a special rule covering them, a rule less advantageous to a taxpayer than section 162(a)" Id. at 362. Thus, unless the legal expenses of trademark cancellation proceedings are excluded from Section 177, a strong inference may be drawn that such expenses are capital in nature.

"Trademark or trade name expenditures" are defined in Section 177(b) of the Code as "any expenditure which: (1) is directly connected with the acquisition, protection, expansion, registration (Federal, State or foreign), or defense of a trademark, trade name, (2) is chargeable to capital account; and (3) is not part of the consideration [or purchase price] paid for a trademark, trade name or business." The district court held this section inapplicable to this case because "the expenditures here claimed were not connected with the acquisition of the registration or the validity of the trademark—they were incurred in defending a cancellation proceeding." We find this to be an incorrect reading of Section 177. That section does not refer to expenses incurred in connection with the "acquisition of registration;" rather, it refers to expenses incurred in connection with the "acquisition * * * of a trademark," or in connection with the "registration * * * of a trademark." No reason appears in the language of the statute to distinguish between costs of the original registration and costs of a cancellation proceeding. Assuredly, costs incurred resisting a cancellation petition are "directly connected with the * * * registration * * * of a trademark."

Concededly, some ambiguity as to the scope of Section 177 has been occasioned by the Treasury Regulations interpreting that section. 26 CFR 1.177–1(b)(1) provides that

"Generally, section 177 will apply to expenditures such as legal fees and other costs in connection with the acquisition of a certificate of registration of a trademark from the United States or other government, * * * litigation expenses connected with infringement proceedings, and costs in connection with the preparation and filing of an application for renewal of registration and continued use of a trademark."

Arguably, the failure to specifically include legal fees incurred in cancellation proceedings may be said to imply that such fees are not covered by Section 177 since, as appellee urges, they are not "chargeable to capital account." As noted earlier, however, the express language of the statute does not require such a narrow reading. Moreover, Revenue Ruling 55–158 [2] suggests the opposite construction. In order to avoid automatic cancellation of a trademark registration after six years, 15 U.S.C. § 1058 requires a registrant to file by the end of the fifth year an affidavit of use with the Patent Office. Revenue Ruling 55–158 holds that amounts spent in preparation and filing of an affidavit of use may not be deducted under 162(a)

1. S.Rep.No.1941, 84th Cong., 2d Sess., p. 8, 1956 U.S.Code Cong. & Admin.News, p. 2918 (1956–2 Cum.Bull. 1227, 1232).

2. 1955–1 Cum.Bull. 319.

of the Code, but must be capitalized. Appellee has not suggested nor do we perceive any basis in logic or policy for treating legal fees incurred resisting a petition to cancel a trademark registration in a manner different from legal fees incurred avoiding the automatic cancellation under 15 U.S.C. § 1058. In both situations the benefits secured extend beyond the tax period during which the fees are paid out. Thus, regardless of the type of trademark expenses which may fall outside the ambit of Section 177(b)(2), it is clear that the legal costs of cancellation proceedings are not among them.

We conclude that the Internal Revenue Service properly classified the fees incident to the cancellation proceeding as a capital expenditure and the deficiency assessed on that basis was correct. Accordingly, the judgment of the district court is reversed and the case remanded with instructions to enter judgment in favor of the plaintiff/appellee herein in the sum of $1,111.60 in taxes and $116.-98 as assessed interest, or a total of $1,-228.58, under the stipulations filed in the court below, in lieu of the judgment entered below for $11,278.

Reversed.