*Decision will be entered under Rule 155.*

MEDCO PRODUCTS CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8037–72. Filed July 15, 1974.

*Lowry McKee,* for the petitioner.
*Michael J. O'Brien,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined the following deficiencies in petitioner's income taxes:

| TYE Nov. 30— | Deficiency |
|---|---|
| 1967 | $4,328.04 |
| 1968 | 6,076.71 |

The sole question for decision is whether legal expenses incurred by petitioner in a trademark infringement lawsuit are deductible as ordinary and necessary expenses under section 162.[1]

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below.

Petitioner was incorporated under the laws of Oklahoma on April 1, 1955, and, at the time of the filing of the petition herein, maintained its principal office at Tulsa, Okla. For the taxable years ended November 30, 1967, and November 30, 1968, petitioner, an accrual basis taxpayer, filed its Federal income tax returns with the district director of internal revenue, Oklahoma City, Okla.

Petitioner traces its antecedents to Illinois where its president, Mark E. DeGroff, originally started business more than 30 years ago as a proprietorship. In 1946 an Illinois corporation was chartered as Medco Products Co., Inc. Upon dissolution of the Illinois corporation, a partnership was formed by Mark E. DeGroff and Laveda Sue DeGroff, doing business as Medco Products Co. The partnership moved to Tulsa, Okla., and was succeeded by the petitioner Medco Products Co., Inc. Since its incorporation in 1955, petitioner has continuously engaged in the business of marketing electrical therapeutic equipment and related products, primarily to the medical profession.

For over 20 years and at all times pertinent to this proceeding, petitioner has used the trademark and trade name "Medco," and most of petitioner's products contain the word "Medco" in their names. Petitioner is the owner of Federal trademark registrations for "Medco," "Medcolator," and "Medco-Sonlator." Petitioner has promoted and advertised its products nationwide under the trade name Medco or similar designations containing the word Medco.

Petitioner regularly polices the use of any trade names which it believes infringes on its trademarks. When violations are discovered, requests to cease and desist are routinely made, and, when necessary, petitioner opposes applications to the United States Patent Office for similar names.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

In June of 1966, petitioner learned that an Illinois corporation chartered under the name of Medco Hospital Supply Corp. was marketing products similar to petitioner's under the name Medco. The Illinois corporation refused to discontinue use of the trademark "Medco" in marketing its products and, in October 1966, petitioner commenced a trademark infringement lawsuit against the Illinois corporation.

In that lawsuit, the court found that the defendant Illinois corporation's use of the trademark "Medco" diluted its distinctive quality and damaged the goodwill and reputation of petitioner. The judgment, in favor of petitioner, permanently enjoined the Illinois corporation or its officers and agents from using the designation "Medco" or any other similar designation which was likely to be confused with the name of petitioner or of any of petitioner's trademarks and enjoined them from otherwise infringing on petitioner's rights. The court awarded petitioner the sum of $1,000 as full compensation for all damages and costs, but petitioner had sustained rather small actual money damages, other than its attorneys' fees, as a result of the infringement activity of the Illinois corporation. The decision entered by the Federal District Court in the trademark infringement lawsuit was not appealed.

The lawsuit in the Federal District Court of Illinois is the only trademark infringement lawsuit in which petitioner has been involved. Petitioner brings the favorable judgment rendered in that lawsuit to the attention of those it believes are infringing upon its trademark.

Legal expenses incurred by petitioner in the trademark infringement lawsuit and deducted in full on its returns amounted to $9,016.76 and $13,955.61 for the taxable years ending November 30, 1967, and November 30, 1968, respectively.

The Commissioner determined that the legal expenses incurred by petitioner in the trademark infringement lawsuit were capital and not deductible as ordinary and necessary business expenses. We sustain the Commissioner's determination on the authority of our decision in *Danskin, Inc.*, 40 T.C. 318 (1963), affd. 331 F. 2d 360 (C.A. 2, 1964).

We find no merit in petitioner's argument that *Danskin* must be distinguished from the instant case because *Danskin* involved "similar" trademarks, while petitioner's litigation involved "identical" trademarks. See *Aluminum Products Co.*, 24 B.T.A. 420 (1931), on which we relied in *Danskin*. Nor do we accept petitioner's argument that, because its litigation merely removed a competitor and "did not increase the value of the trademark Medco in petitioner," we should disregard *Danskin*. We are unwilling to hold that the litigation did not affect "Medco" just as the settlement affected "Danskin," for the litigation assured "petitioner of an unmolested use of its trademark

by the permanent elimination of competition." *Danskin, Inc., supra* at 323.

Petitioner argues that our decision in *Danskin* was incorrect because we relied on factually distinguishable cases. Although *Aluminum Products Co., supra, Clark Thread Co.* v. *Commissioner*, 100 F. 2d 257 (C.A. 3, 1938), affirming 28 B.T.A. 1128 (1933), and *Sanymetal Products Co., Inc.* v. *Carey*, an unreported case (N.D. Ohio 1957, 52 A.F.T.R. 1735, 57–2 U.S.T.C. par. 9865), involve fact situations which are not identical to those in *Danskin*, they reflect an underlying principle which helped us resolve *Danskin.* That principle requires capital treatment of expenses incurred to force another party to abandon the use of a trademark identical or similar to that of the taxpayer because the taxpayer's rights in the trademark are thereby enhanced and the benefits accruing to the taxpayer cannot be confined to the year of acquisition. See also *Georator Corporation* v. *United States*, 485 F. 2d 283 (C.A. 4, 1973), certiorari denied 417 U.S. 945 (1974); *Clark Oil & Refining Corporation* v. *United States*, 473 F. 2d 1217, 1219 (C.A. 7, 1973). In addition, as we suggested in *Danskin, Inc., supra* at 323, when, through litigation, a taxpayer is "assured * * * of an unmolested use of its trademark by the permanent elimination of competition from a confusingly similar trademark," the expenses of the litigation are expenses incurred in defending title to property and are capital. See also *William F. Wallace, Sr.*, 56 T.C. 624 (1971); *J. Bryant Kasey*, 54 T.C. 1642 (1970), affirmed per curiam 457 F. 2d 369 (C.A. 9, 1972). Under these principles, petitioner's expenditures must be classified as capital.[2]

Petitioner's final argument is that, in *United States* v. *Gilmore*, 372 U.S. 39 (1963); *Woodward* v. *Commissioner*, 397 U.S. 572 (1970); and *United States* v. *Hilton Hotels*, 397 U.S. 580 (1970), the Supreme Court has "effectively overruled" the *Danskin* decisions of this Court and the Second Circuit by rejecting the "primary purpose" rule in favor of the "origin of the claim" rule. Petitioner argues that the origin of its claim was the protection of future income and that, accordingly, the cost of prosecuting the claim was deductible.

We cannot accept those arguments. Our decision in *Danskin* did not utilize the "primary purpose" approach. Instead, we relied on the fact that the taxpayer was protecting title to property and that benefits derived from the litigation extended beyond the taxable year of litigation.[3] Moreover, we do not believe that the application of the "origin

---

[2] Because we rely on our decision in *Danskin*, we need not consider petitioner's criticism of the way in which the Second Circuit used sec. 177. (331 F. 2d at 361–362.) In this respect, see *Georator Corporation* v. *United States*, 485 F. 2d 283 (C.A. 4, 1973).

[3] For this reason, we consider irrelevant not only the Supreme Court cases cited by the parties, but also *Estate of Joseph M. Meade*, T.C. Memo. 1972–190, which both parties discussed and which has recently been reversed, 489 F. 2d 161 (C.A. 5, 1974), certiorari applied for May 6, 1974.

of the claim" rule would require us to hold petitioner's expenditures deductible. See *Vincent Boagni, Jr.*, 59 T.C. 708, 713 (1973), where we stated that the rule required examination of all the facts, including:

the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy. * * *

See also *Stass Reed*, 55 T.C. 32 (1970). The fact that petitioner's suit may have resulted in greater future income is a "consequence" of its protection of its trademark and is not the "origin" of its claim. *Anchor Coupling Co.* v. *United States*, 427 F. 2d 429 (C.A. 7, 1970), certiorari denied 401 U.S. 908 (1971).[4]

Because we do not believe that our decision in *Danskin* has been overruled, was incorrectly decided, or should be distinguished, we consider it controlling precedent. See *Blaine M. Madden*, 57 T.C. 513, 520 (1972), where we spoke as follows of expenses of defending property against claims of others:

Faced with what Justice Frankfurter termed 'dialectic conflicts,' *Trust of Bingham* v. *Commissioner*, 325 U.S. 365, 378, in this confusing and troublesome area, we prefer to adhere to a controlling precedent rather than veer off in a new direction.

Accordingly, we hold that petitioner's legal expenses were capital and not deductible under section 162.

*Decision will be entered for the respondent.*

---

[4] We need not decide whether, as the Commissioner argues citing *Woodward* v. *Commissioner*, 397 U.S. 572, 576 (1970), the "primary purpose" test remains an appropriate test in certain circumstances.