Blaine M. and Virginia C.
MADDEN, Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 72–2536.

United States Court of Appeals,
Ninth Circuit.

April 9, 1975.

Scott P. Crampton, Asst. Atty. Gen. (argued), Washington, D. C., for appellant.

Blaine M. Madden, in pro. per.

Before CHOY and GOODWIN, Circuit Judges, and BURNS,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

The Commissioner of Internal Revenue appeals the judgment of the Tax Court

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

determining that legal fees paid by taxpayers are deductible as ordinary and necessary business expenses under section 162(a), Internal Revenue Code of 1954.[1] We conclude that the legal fees were capital expenses, and reverse.

Blaine M. and Virginia C. Madden own and operate a commercial orchard near Brewster, Washington. In 1966, a county public utility district filed two actions to condemn parts of taxpayers' land for use as a reservoir. Contesting these proceedings, taxpayers unsuccessfully attempted to limit the condemnation to the taking of a flowage easement rather than a fee-simple interest.[2]

In their joint income tax returns for the taxable years ending June 30, 1965, through 1968, taxpayers deducted legal fees incurred in the condemnation proceedings as current expenses under § 162 or § 212.[3] The Commissioner determined deficiencies after denying these deductions on the theory that the legal fees constituted capital expenditures under § 263.

■ The statutes involved in this appeal are relatively clear. Sections 162 and 212 allow a taxpayer to deduct many current expenses from ordinary income if they are related to business or profit-seeking activity. Once that nexus is established, however, the taxpayer still cannot be sure of deducting the expenses. Rather, an additional question must be answered: Are the expenses "capital" in nature under § 263? If they are capital, they cannot be deducted as business expense. Woodward v. Commissioner, 397 U.S. 572, 575, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970).

In the instant case, all parties agree that the legal expenses were related to business or profit. The sole issue is whether they must be capitalized. Underlying the controversy is the absence of a clear definition of "capital expense".

The line between capital and noncapital expenditure is especially difficult to draw with regard to litigation expenses, which arise in a variety of contexts. However, two of the more common situations giving rise to legal fees are particularly relevant to the instant case: protection of an ongoing business, and the purchase or sale of land.[4] In both of these situations, the Supreme Court has articulated tests for determining whether a legal expense is capital in nature.

■ Where legal fees may have been spent to protect a business, the question is whether the "suit or action against a taxpayer is directly connected with, or, as otherwise stated * * * proximately resulted from, his business * * *." Kornhauser v. United States, 276 U.S. 145, 153, 48 S.Ct. 219, 220, 72 L.Ed. 505 (1928) (accounting suit brought by former partner regarding partnership profits). Accord, Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945) (suit involving devolution of assets of estate); Commissioner v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966) (prosecution for violation of Securities Act by stock underwriter in performance of his business).

Under the standard of the last-cited cases, taxpayers' legal fees were not expended in litigation arising out of, directly connected with, or proximately resulting from their business. Unlike, for example, fees which petitioners might spend to collect money due from the sale of their fruit, these litigation expenses were only tangentially related to the orchard business.

1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

2. A detailed review of these proceedings is reported in the opinion of the Tax Court, 57 T.C. 513 (1972).

3. Taxpayers segregated their legal expenses in resisting condemnation and in seeking to max-

imize their award once condemnation was certain. The latter expenses were properly capitalized and are not at issue here.

4. The Commissioner urges that we examine a third situation—defending title to property—and extend it to apply to the instant case. In light of our resolution of the issues noted here, we do not reach this argument.

The Supreme Court has recently formulated a standard for determining whether legal fees were involved in the sale or acquisition of land. Rejecting a test based on the taxpayer's "primary purpose" in participating in the lawsuit, the Court used "the simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself." Woodward v. Commissioner, 397 U.S. at 577, 90 S.Ct. at 1306. *Cf.* United States v. Gilmore, 372 U.S. 39, 49, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963). In using an "origin and character" test, the Court in *Woodward* implied that such a test should be used to characterize litigation expenses whenever its use would be feasible. 397 U.S. at 577–78, 90 S.Ct. 1302.

■ When condemnation litigation involves the price the government will pay the property owner for the condemned land, the litigation expenses must be considered capital expenditures under the above test. *See* United States v. Hilton Hotels, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). The Maddens, however, were litigating the right of the government to take a fee interest instead of a less drastic alternative. We have found no case arising since the decisions in *Gilmore* and *Woodward* that discusses whether or not such expenses are capital in nature.[5]

■ In looking to the origin and character of the litigation, however, we are compelled to treat the legal expenses as capital in nature. The underlying lawsuit did not arise out of taxpayers' business,[6] but out of the need of a governmental agency for taxpayers' land. The public need presumably existed without regard to the consequences to taxpayers' business. The government was attempting to appropriate taxpay-

ers' land and taxpayers were resisting that attempt. Such a controversy is inherently related to the sale and acquisition of land, even though the ultimate sale, if one is made, is a forced sale. *See* Hawaiian Gas Products v. Commissioner, 126 F.2d 4 (9th Cir.), cert. denied, 317 U.S. 653, 63 S.Ct. 48, 87 L.Ed. 525 (1942); Stockton Harbor Industrial Co. v. Commissioner, 216 F.2d 638 (9th Cir. 1954).

Examining the rationale for an "origin and character" test, we are convinced that it is the correct standard to use in determining the nature of the legal fees at issue here. One reason the Court adopted that test was to avoid "capricious results. If two taxpayers are each sued for an automobile accident while driving for pleasure, deductibility of their litigation costs would turn on the mere circumstances of the character of the assets each happened to possess, that is, whether the judgments against them stood to be satisfied out of income- or nonincome-producing property * *." United States v. Gilmore, 372 U.S. at 48, 83 S.Ct. at 629.

Similarly, in *Woodward*, the Court noted that "[a] test based upon the taxpayer's 'purpose' in undertaking or defending a particular piece of litigation would encourage resort to formalisms and artificial distinctions * * *." 397 U.S. at 577, 90 S.Ct. at 1306.

We believe that rejection of the "origin and character" standard in situations such as that in the instant case would result in allowing different taxpayers to characterize basically similar litigation in the manner that would have the most beneficial tax consequences to each. Although use of the "origin and character" standard allows the governmental agency to determine unilaterally the nature

---

**5.** The court below relied on L. B. Reakirt, 29 B.T.A. 1296 (1934), affirmed per curiam, 84 F.2d 996 (6th Cir. 1936), which did discuss the tax consequences of resisting condemnation. Although *Reakirt* concluded that the taxpayer's litigation expenses were deductible, the court used a standard based on the taxpayer's purpose in litigating. Since we view that

standard as having been repudiated in most cases (*but see* Woodward v. Commissioner, 397 U.S. 572 at 576–77, 90 S.Ct. 1302 (1970)), we decline to follow the *Reakirt* rationale.

**6.** An example of land-related litigation originating in taxpayer's business activities might be a neighbor's suit to enjoin as a nuisance taxpayer's aerial spraying of his orchard.

of the litigation, and thus the tax consequences for the taxpayer, we do not think this phenomenon invalidates its application. The agency initiated the condemnation proceedings here for a tax-neutral purpose. Where this is so, there is no inherent unfairness to the taxpayer. Furthermore, all taxpayers with capital assets affected by the agency's actions will be similarly treated. Finally, the element of certainty, particularly desirable in tax law, is enhanced.

Reversed and remanded.