BHA ENTERPRISES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8371–78.    Filed June 24, 1980.

*Mark D. Pastor,* for the petitioner.
*Marshall W. Taylor,* for the respondent.

NIMS, *Judge:* Respondent determined deficiencies in petitioner's income tax for the taxable years ending April 30, 1974, and April 30, 1975, in the respective amounts of $9,267 and $5,364. The issue for decision is whether petitioner, a radio broadcasting corporation, is entitled to deduct litigation expenses incurred in connection with proceedings instituted by the Federal Communications Commission to revoke its broadcasting licenses.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of

facts together with the attached exhibits are incorporated herein by this reference.

The petitioner, BHA Enterprises, Inc. (BHA), is a California corporation whose principal place of business at the time of filing its petition in this case was Apple Valley, Calif. Petitioner's Federal income tax returns for the taxable years ending April 30, 1974, and April 30, 1975, were filed with the Internal Revenue Service Center at Fresno, Calif.

Petitioner has been in the business of radio broadcasting since 1962, when it purchased assets of the radio station KAVR, located in Apple Valley, Calif. On November 8, 1962, the Federal Communications Commission (FCC) issued a standard broadcast license permitting petitioner to operate KAVR from December 1, 1962, through December 1, 1965. This standard broadcast license for KAVR was reissued or renewed on the dates and for the periods shown below:

| Date | Action | Effective period |
|------|--------|------------------|
| 11/ 5/65 | Reissuance | 12/1/65—12/1/68 |
| 11/26/68 | Reissuance | 12/1/68—12/1/71 |
| 11/25/72 | Renewed | Through 12/1/74 |

As of the date of the trial of this case petitioner had, commencing December 1, 1962, continuously operated station KAVR.

On October 28, 1964, the FCC granted to petitioner a construction permit for a class A, FM broadcast station in Apple Valley, Calif. Petitioner was granted an FM broadcast station license for KAVR-FM on December 16, 1968, effective for the period from December 16, 1968, through December 1, 1971. The FCC issued a certificate renewing petitioner's license to operate KAVR-FM for a period ending December 1, 1974. As of the date of the trial of this case, petitioner had, commencing December 16, 1968, continuously operated KAVR-FM.

On July 3, 1972, an application was filed with the FCC for consent to transfer partial control of the Auburn Broadcast Corp. (Auburn) to petitioner. Auburn was the holder of licenses for radio stations KAHI and KAFI (FM), both located in Auburn, Calif. This transfer was to be effected by the sale of Auburn's outstanding stock to petitioner and Donald J. Inglett in the respective proportions of 45 percent and 55 percent.

Petitioner withdrew this application (the Auburn application) on June 29, 1973.

At some time prior to September 12, 1973, petitioner entered into negotiations with Phoenix Broadcasters Corp. of Burbank, Calif. (Phoenix), regarding the sale of petitioner's business assets and the assignment of the entitlement to broadcast in Apple Valley over the wavelengths of petitioner's two radio stations, KAVR (wavelength 960) and KAVR-FM (wavelength 102.3). It was understood, however, that any assignment of petitioner's entitlement to broadcast over the two wavelengths would be conditioned upon the FCC's approval of Phoenix as a licensee. Accordingly, on September 12, 1972, an application for a consent to assignment of licenses for KAVR and KAVR-FM from petitioner to Phoenix was filed with the FCC (the Phoenix application). Because of ensuing legal difficulties which petitioner faced in connection with license revocation proceedings instituted by the FCC, the Phoenix application was dismissed on October 11, 1973, at the request of the petitioner.

At the same time, the FCC commenced legal proceedings against petitioner for purposes of revoking its broadcast licenses for both KAVR and KAVR-FM. The revocation proceedings were initiated by the FCC by issuance of an "Order to Show Cause and Notice of Apparent Liability," adopted October 11, 1973, and released October 16, 1973. In conjunction with the issuance of the order to show cause, the chief of the FCC's Broadcast Bureau prepared a bill of particulars containing the alleged facts which supported the revocation of petitioner's broadcast licenses. As framed by the order to show cause and the bill of particulars, the following issues were the subject of the revocation proceedings:

(1) Whether a transfer of petitioner's licenses, alleged to have occurred in 1965 through a stock transfer resulting in a shift in majority control of petitioner, had occurred without FCC authorization;

(2) Whether periodic ownership reports filed subsequent to the alleged transfer, but without reflecting the alleged transfer, were inaccurate;

(3) Whether the Auburn and Phoenix transfer applications contained false information respecting outstanding judgments against Gerald Hicks, a principal shareholder of petitioner;

(4) Whether petitioner, or any officer, shareholder, or director,

had obtained anything of value from anyone under false pretenses or by fraudulent means through the use of false stock certificates of the petitioner;

(5) Whether, in light of the foregoing allegations if found to be true, petitioner was qualified to remain a licensee of the FCC.

As it is necessary to possess a broadcast license issued by the FCC in order to engage in radio broadcasting, petitioner contested the allegations made against it.

Hearings were held before administrative law Judge Ruben Lozner in March and April of 1974. In his decision, dated October 25, 1974, and released November 5, 1974, Judge Lozner found that the allegations contained in the bill of paritculars had been established, and ordered that petitioner's licenses for the operation of both KAVR and KAVR-FM be revoked.

Petitioner appealed that decision and requested a finding by the full FCC. After further proceedings, the full FCC reversed Judge Lozner's decision in all respects save one. In a decision released March 9, 1978 (dated March 3, 1978), the full FCC found that misstatements regarding unsatisfied judgments against petitioner's principal shareholder had been made on the Auburn and Phoenix applications. However, the full FCC concluded that the record did not support the Broadcast Bureau's remaining allegations and thus did not order revocation of petitioner's licenses. As a sanction for making the misstatements on the transfer applications, a $1,000 fine was imposed against the petitioner.

For its defense in the revocation proceedings, petitioner paid the following amounts for legal fees:

| *TYE 4/30/74* | *TYE 4/30/75* |
| --- | --- |
| $31,246 | $15,198 |

The legal fees were reasonable in amount and necessarily incurred in defense of petitioner's position in the proceedings. Success by the FCC in prosecuting its suit against petitioner would have prohibited further operation of petitioner's business.

### ULTIMATE FINDING OF FACT

The legal fees incurred by petitioner in the defense of the suit brought against it by the FCC arose because of the petitioner's

business activities and did not result in the acquisition or disposition of a capital asset.

## OPINION

The issue presented in this case is whether legal expenses a radio station incurs in connection with proceedings to revoke its broadcasting licenses are currently deductible under section 162.[1] Petitioner's position is that the legal fees were ordinary and necessary business expenses incurred in order to continue operating its radio broadcasting business. In other words, petitioner emphasizes the word "necessary" in section 162 since the sine qua non for its continued broadcasting activities was a successful defense of its license. To the contrary, respondent insists that, notwithstanding the ordinary and necessary attributes of the instant legal fees, current deductions are precluded by section 263 since they constituted capital expenditures. Because the primary issue in the revocation proceedings was whether petitioner was entitled to retain intangible assets whose useful life extended beyond a single taxable year (its broadcast licenses), respondent argues that the legal expenses require capitalization.

The parties are in agreement that the legal fees at issue were proximately related to petitioner's trade or business; revocation of the licenses would have absolutely precluded petitioner from engaging in any radio broadcasting activity,[2] which was its only activity. Nevertheless, all business-related expenditures are subject to the capitalization limitations established by prior case law and section 263.[3] *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974).

In our view, this case falls squarely within situation 1 of Rev.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, except as otherwise expressly indicated.

[2] There is no dispute as to the nature of the FCC litigation. Petitioner's entitlement to retain its broadcasting licenses was the ultimate issue to be resolved. Accordingly, we need not consider the continued vitality of the "primary purpose" test vis-a-vis the "origin of the claim" standard for purposes of analyzing whether attorney's fees constitute capital expenditures. See *Woodward v. Commissioner*, 397 U.S. 572, 577 (1970).

[3] Sec. 263(a)(1) states in pertinent part as follows:

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings for permanent improvements or betterments made to increase the value of any property or estate. * * *

Rul. 78–389, 1978–2 C.B. 126, and therefore petitioner must prevail. For the reasons hereinafter elucidated, we find the Commissioner's rationale in supporting his holding in this revenue ruling to be persuasive and applicable to this case.

The facts postulated by the Commissioner in situation 1, Rev. Rul. 78–389, are as follows:

*Situation 1.* The taxpayer is engaged in the business of quarrying and supplying sand and stone in a certain municipality. Several years after the taxpayer established its business, the municipality in which it was located passed an ordinance that prohibited the operation of the taxpayer's business. The taxpayer incurred attorney's fees of 10x dollars in a successful prosecution of a suit to invalidate the municipal ordinance.

On these facts, the Commissioner ruled as follows:

In *Situation 1*, the prosecution of a suit to invalidate the application of a municipal ordinance that would prohibit the operation of the taxpayer's business arose because of the taxpayer's business activities. Additionally, the expenditures did not result in the acquisition or disposition of a capital asset. Accordingly, the legal expenses incurred, 10x dollars, are deductible as ordinary and necessary business expenses under section 162 of the Code.

Clearly, had the FCC prevailed in its action against petitioner, the effect would have been to prohibit the operation of petitioner's business, namely, the operation of stations KAVR and KAVR-FM, and clearly the action which petitioner was called upon to defend arose because of the petitioner's business activities. To us this puts the case squarely within situation 1. The FCC alleged that petitioner had illegally transferred its broadcast licenses through a stock transfer and filed inaccurate periodic ownership reports; had filed transfer applications containing false information respecting outstanding judgments against a principal shareholder of petitioner; had obtained, with one or more of its officers, shareholders, or directors, something of value under false pretenses or by fraudulent means through the use of false stock certificates; and, in light of the foregoing allegations, if found to be true, was not qualified to remain a licensee of the FCC. Petitioner expended $31,246 in legal fees for the taxable year ending April 30, 1974, and $15,198 for the taxable year ending April 30, 1975, in successfully challenging these allegations, and we have found, as a fact, that these expenses were reasonable and necessarily incurred in defense of petitioner's position in the proceedings.

In the event our decision in this case is appealed, the appeal

will lie to the Ninth Circuit Court of Appeals. That court decided *Madden v. Commissioner*, 514 F.2d 1149 (9th Cir. 1975), revg. 57 T.C. 513 (1972). If *Madden* is the law of the case, then under *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we are required to follow it. In our opinion, however, *Madden* is distinguishable from the case before us, essentially for reasons stated in the *Madden* decision itself and we apply the *Madden* reasoning to reach the result here.

As observed by the Ninth Circuit in the *Madden* case, three Code sections are involved—sections 162, 212, and 263—and even though the taxpayer establishes the nexus between the expenses involved and a business or profit-seeking activity (sec. 162 or sec. 212), the taxpayer still cannot be sure of deducting the expenses. Rather, as stated by the court, "an additional question must be answered: Are the expenses 'capital' in nature under §263? If they are capital, they cannot be deducted as business expense. Woodward v. Commissioner, 397 U.S. 572, 575 * * * (1970)."

The *Madden* court noted that two of the more common situations giving rise to legal fees were particularly relevant to the case before the court (as they are in this case): protection of an ongoing business and the purchase and sale of a capital asset; in the *Madden* case, land. The court, 514 F.2d at 1150, posited the appropriate standard as follows:

> Where legal fees may have been spent to protect a business, the question is whether the "suit or action against a taxpayer is directly connected with, or, as otherwise stated * * * proximately resulted from, his business * * * ." Kornhauser v. United States, 276 U.S. 145, 153 * * * (1928) (accounting suit brought by former partner regarding partnership profits). *Accord,* Trust of Bingham v. Commissioner, 325 U.S. 365 * * * (1945) (suit involving devolution of assets of estate); Commissioner v. Teller, 383 U.S. 687 * * * (1966) (prosecution for violation of Securities Act by stock underwriter in performance of his business).

The court then measured the facts of the case before it by this standard and found them lacking sufficient elements of deductibility.

The facts in *Madden* were simple: Mr. and Mrs. Madden owned and operated a commercial orchard. A county public utility district filed two actions to condemn parts of their land for use as a reservoir. Contesting these proceedings, the taxpayers unsuccessfully attempted to limit the condemnation

to the taking of a flowage easement rather than a fee-simple interest.

The *Madden* court applied a further test, derived from the Supreme Court's decision in *Woodward v. Commissioner,* 397 U.S. 572 (1970), which rejected a test based on the taxpayer's "primary purpose" in participating in a law suit and inquired, instead, whether the origin of the claim litigated was in "the process of acquisition" itself. The *Madden* court stated that "In using an 'origin and character' test, the Court in *Woodward* implied that such a test should be used to characterize litigation expenses whenever its use would be feasible." We think the use of such test is feasible in the case before us.

The origin and character of the litigation considered by the court in the *Madden* case did not arise out of the taxpayers' business, but out of the need of a governmental agency for the taxpayers' land. As stated by the court, "Such a controversy is inherently related to the sale and acquisition of land, even though the ultimate sale, if one is made, is a forced sale." Similarly, in the *Woodward* case, the Supreme Court held that the litigation expenses involved in that case were directly related to the purchase of stock and were part of the cost of acquisition.

The *Madden* court, in a footnote to its decision, gave, as an example of land-related litigation originating in taxpayer's business activities, a neighbor's suit to enjoin as a nuisance taxpayer's aerial spraying of his orchard. *Madden v. Commissioner, supra* at n. 6. Similarly, the gravamen of the case before us was the FCC's complaint against petitioner about the way it was observing—or failing to observe—the FCC's rules, plus various other alleged business abuses. No buying or selling of property was involved. Thus, the "claim litigated" was in no way related to the process of acquisition but rather developed solely as a result of petitioner's business activities.

In another footnote (n. 4), the *Madden* court declined to examine the defense of title approach and extend it to the case before it. Section 1.212–1(k), Income Tax Regs., disallows "Expenses paid or incurred in defending or perfecting title to property." Likewise, while petitioner's litigation certainly involved its right to retain its broadcast licenses and, in this sense, was a defense of its "title" thereto, we think that, for the purpose of this case, this concept must be subsumed into the

broader test laid down by the Supreme Court in *Woodward* and the Ninth Circuit in *Madden;* i.e., whether petitioner's business activity was the source of the litigation, and for this reason, a defense of title argument must fail. But cf. *Georator Corp. v. United States,* 485 F.2d 283 (4th Cir. 1973) (legal costs incurred in resisting cancellation of a trademark required to be capitalized).

We return now to Rev. Rul. 78–389, *supra.* In the ruling, the Commissioner applied the test of the origin and character of the litigation to see whether the suit or action in the hypothesized situation 1, *supra,* was directly connected with or otherwise proximately resulted from the taxpayer's business activities. The ruling analyzes the holdings in *Madden* and *Woodward* in the following manner:

> If the legal expenditures do not have their origin in the taxpayer's profit-seeking activities, such costs may not be deducted as ordinary and necessary expenses. See *Madden v. Commissioner,* 514 F.2d 1149 (9th Cir. 1975), in which expenses incurred in contesting a condemnation proceeding of the taxpayers' business property by a public utility district were required to be capitalized since the underlying lawsuit did not arise out of the taxpayers' profit-seeking activities, but out of the need of the governmental agency for the taxpayers' land. Further, to be deductible as ordinary and necessary business expenses, the expenditures may not have their origin in the acquisition or disposition of a capital asset. See *Woodward v. Commissioner,* 397 U.S. 572 (1970) Ct. D. 1939, 1970–1 C.B. 56.

Applying these cases to the facts of situation 1, which, as we have noted, are analogous to those in the case before us, the ruling held that the described litigation did arise because of taxpayer's business activities and did not result in the acquisition or disposition of a capital asset.

In situation 2 and situation 3 of Rev. Rul. 78–389, *supra,* the Commissioner went on to give examples of situations which, in his opinion *would* produce nondeductible capital expenditures, applying section 263, rather than deductible business expenses, applying section 162 or 212. In situation 2, the expenses were incurred by a taxpayer to expand its ongoing business and the expenditures had their *origin* in the *acquisition* of permanent improvements. In situation 3, litigation contesting the establishment of a building line across the taxpayer's property arose not because of the taxpayer's profit-seeking activities but because of the taxpayer's ownership of the property. Accordingly, the legal expenditures incurred in the unsuccessful contest of the building

line were held to be nondeductible capital expenditures under section 263.

While we emphasize that the Commissioner's opinions expressed in the revenue ruling are not binding upon this Court, we agree with the Commissioner's analysis of the law applicable to the hypothesized facts. The facts postulated in situation 2 and situation 3 are not apposite to the situation before us, but the facts postulated in situation 1 are apposite, and amount to a recognition that the legal expenses incurred by taxpayers similarly situated, including the petitioner, must be allowed as deductible business expenses under section 162.

Our decision in *Soelling v. Commissioner*, 70 T.C. 1052 (1978), in which we disavowed our prior decision in *Madden v. Commissioner*, 57 T.C. 513 (1972) (which, as noted above, was reversed by the 9th Circuit) is entirely consistent with *Woodward* and the Ninth Circuit's *Madden* decision, and with our decision in this case. *Soelling* involved amounts expended for professional fees in connection with the condemnation of property and the rezoning of the remainder of the tract. We applied the origin and character test enunciated in *Woodward* and amplified in *Madden* to find that the amounts spent by the taxpayer were capital expenditures not currently deductible because the origin and character of the activity from which these expenditures derived were capital in nature.

Respondent, in his brief, argues that petitioner's litigation expenses were incurred in defending claims against capital assets, its broadcast licenses, and therefore that such expenses are capital expenditures. But it cannot be gainsaid that the claims against petitioner, had they been successful, would have destroyed petitioner's entire business, exactly the situation in the much quoted revenue ruling referred to above. Surely, if the hypothetical owner-taxpayer of a quarry can attack a municipal ordinance which would have put the taxpayer out of business and deduct the legal expenses incurred in so doing, then the owner-taxpayer of a broadcasting station can, with as much justification, deduct the cost of a defense against FCC action which, if successful, would have put the taxpayer out of business. The origin and character of the litigation in each case is directly connected with or otherwise proximately results from the taxpayer's business activities.

Since we have found as a fact that the legal expenses in

question were ordinary and necessary and had a business nexus, and furthermore that the origin and character of the litigation proximately resulted from the taxpayer's business activities, we hold such expenses to be deductible under section 162.

*Decision will be entered for the petitioner.*