ANDERSON-TULLY COMPANY AND SUBSIDIARY, PATTON-TULLY TRANSPORTATION COMPANY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson-Tully Co. v. Commissioner
Docket No. 18917-81.
United States Tax Court
T.C. Memo 1984-338; 1984 Tax Ct. Memo LEXIS 333; 48 T.C.M. (CCH) 415; T.C.M. (RIA) 840338; July 3, 1984. David Wade and Harry J. Skefos, for the petitioners. Robert P. Crowther, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the fiscal years 1977 and 1978 in the respective amounts of $777.76 and $6,045.54. The only issue for our decision is whether certain legal fees incurred by Anderson-Tully Company were ordinary and necessary business *334 expenses deductible under section 162 [1] or capital expenditures under section 263. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Anderson-Tully Company (hereinafter sometimes referred to as petitioner) had its principal office in Memphis, Tennessee, at the time the petition in this case was filed. It filed consolidated corporate income tax returns using the accrual basis of accounting with its subsidiary, Patton-Tully Transportation Company, for fiscal years ending July 31, 1977 and July 31, 1978. The consolidated returns were filed with the Internal Revenue Service Center at Memphis, Tennessee. Anderson-Tully was incorporated in 1889 and over the years has engaged in the hardwood lumber business. At first it produced only boxes and baskets for fruits and vegetables from lumber purchased from others. Subsequently, cases and crates for eggs and beverages were added to its production. For several years prior to the trial, it primarily *335 produced parts for the furniture industry and laminated flooring for the trucking industry. Since about 1900 all of its production has been from timber grown on its own land. In fact, as part of its overall operation, the company maintains several sawmills which annually harvest millions of board feet of hardwood lumber from the several hundred thousand acres of timberland which the company owns. In order to have a constant supply of high-quality timber, Anderson-Tully has developed and followed for many years a program designed to conserve the productivity of its timberland. The program is based in part on selective cutting and the natural regeneration of the timber. As a result, petitioner's harvest cycle ranges on the average from 10 to 15 years but on occasion at a particular tract or site it may span 30 to 60 years. Most of the timberlands are used for no purpose other than to grow timber and are not fenced, or occupied or even frequently inspected by Anderson-Tully's employees or agents. Eighty percent of the acreage borders on the Mississippi River. It is comprised of numerous separate tracts lying in several states between Cario, Illinois, and Natchez, Mississippi. The *336 company attempts to identify each tract by painting blue lines on the trees located along the boundaries but due to their number, size, and the great distance between the tracts it is not feasible to mark the boundaries of any one tract more often than once in each decade. Furthermore, the boundary of each tract which borders on the river is constantly changing by either accretion or avulsion. In the process of accretion, the river deposits sediment along its bank and thereby extends or adds to the property of riparian owners. The opposite occurs in the process of avulsion where the river changes its course or otherwise removes soil from a riparian owner and decreases his property. The vast area over which the unoccupied land is located, the infrequent contact which the employees of Anderson-Tully have with the land and timber, and the fact that the river boundaries are constantly changing are all factors which tend to cause the timberlands to be peculiarly subject to claims of adverse possession. Over the years, both the assertion and defense of such claims have resulted in substantial litigation by or against Anderson-Tully, especially in Mississippi where an adverse claimant *337 can legally harvest timber from land on which he has maintained an encroachment for ten years or more. Consequently, as part of its overall policy of protecting and conserving its source of timber, Anderson-Tully reacts firmly and decisively to any situation which could serve as a basis for such a claim. During the fiscal years 1977 and 1978, the company incurred legal fees in the respective amounts of $3,225.42 and $14,023.00 in connection with two such lawsuits. On its returns the legal fees were deducted as current business expenses under section 162. The respondent does not question the amount of the fees. He contends, however, that they are not deductible as business expenses under section 162 but must be capitalized under section 263 as part of the cost of the land. The first lawsuit involved title to certain accretions to the eastern bank of the Mississippi River at the point where the common line between a tract of land owned by Anderson-Tully and a tract owned by Paul H. Jones intersected the river. In the suit brought against Anderson-Tully by Paul H. Jones in the United States District Court, Paul H. Jones contended that he owned most of the accretion because the *338 common line should be extended into and across the accreted lands from the point of intersection on a line running directly west from the original riverbank. Anderson-Tully contended it owned most of the accretion because the common line should be extended along its last call or course. The District Court found for Anderson-Tully and held that the company had acquired title to the disputed land by adverse possession. In the second action Anderson-Tully brought suit in the District Court against a certain Donald Mack Johnson to quiet title to certain lands in which they both claimed an interest as owner and lessor. In 1977 the case was disposed of with the entry by the District Court of a consent decree in which Anderson-Tully was declared the owner of the disputed property and all claims to any title by Johnson were cancelled of record. Neither lawsuit or any portion of the fees incurred by Anderson-Tully concerned the recovery of or an accounting for any severed timber. The lawsuits dealt solely with the establishment of title to the disputed properties. OPINION The only question before us is whether the legal fees incurred by Anderson-Tully in prosecuting the one lawsuit *339 and defending the other are nondeductible capital expenditures under section 263 or deductible business expenses under section 162. [2]
Petitioner points to the fact that its policy of litigating all claims which may lead to adverse possession has been in effect for many years and is a practical way to protect its timber inventory. It concludes, therefore, that its primary purpose in the litigation was to protect its business activities which were dependent upon the timber on the disputed real estate. The primary purpose test, relied upon by the petitioner, [3] was used in Industrial Aggregate Company v. United States,284 F.2d 639 (8th Cir. 1960), where the Court of Appeals first recognized that if the primary purpose of a lawsuit is to perfect or defend title, the expenses of such suit are not deductible, but then concluded that if the defense or perfection of title is not the primary purpose of the litigation, the expenditures may qualify as ordinary and necessary expenses. However, thereafter the Sumprme Court adopted the rule that *340 where the litigation involved the acquisition or disposition of a capital asset, the origin and character of the claim and not the taxpayer's primary purpose in litigating the claim controlled the capitalization or deduction of the litigating expenses. Woodward v. Commissioner,397 U.S. 572, 575 (1970); United States v. Hilton Hotels,397 U.S. 580 (1970); United States v. Gilmore,372 U.S. 39 (1963). This Court has extended the same rule to expenses incurred in litigation involving the defense or perfection of title to property. Boagni v. Commissioner,59 T.C. 708, 713 (1973). See also Reed v. Commissioner,55 T.C. 32 (1970), and Von Hafften v. Commissioner,76 T.C. 831 (1981). Petitioner's reliance on Madden v. Commissioner,514 F.2d 1149 (9th Cir. 1975), revg. *341 57 T.C. 513 (1972) is misplaced. [4] In that case, the taxpayers incurred legal fees in connection with their commercial orchard. They unsuccessfully attempted to limit condemnation of a part of their land by a governmental agency to the taking of a flowage easement rather than a fee-simple interest. The Court of Appeals applied the origin-of-the-claim test and held that the dispute was related to the sale or acquisition of the land, and thus the legal fees were capital expenditures under section 263. [5]
We agree with the petitioner that a legal expense incurred for the protection of an on-going business activity is deductible if the legal action proximately results from the taxpayer's business. *342 BHA Enterprises, Inc. v. Commissioner,74 T.C. 593 (1980). Here, however, it is clear from the record as a whole that the expenses of litigating the two lawsuits were incurred in order to establish petitioner's ownership of land created by the meanderings of the Mississippi River. In the Johnson suit, a consent decree was entered which established the exact boundaries of petitioner's property and cancelled of record all claims of title to the disputed land by Johnson. In the Jones suit, after a trial, the District Court found the boundaries of petitioner in the accretion land and held that petitioner had gained title to the accretion by adverse possession.The Court also cancelled of record all claims of title by Jones to the disputed land. [6] Without denying that as a practical matter petitioner may find it necessary to litigate potential claims of adverse possession, we conclude that the genesis of its litigation expenses in this case was the protection and defense of title to its property. As such the expenses constitute nondeductible capital expenditures. See *343 Boagni v. Commissioner,supra;Reed v. Commissioner,supra;Kasey v. Commissioner,54 T.C. 1642 (1970), affd. 457 F.2d 369 (9th Cir. 1972). Petitioner's position is similar to that of the taxpayer in Lowry v. Commissioner,T.C. Memo. 1968-173, who sought to deduct the expense of surveying her Montana ranch. We found that the expense was a capital expenditure undertaken to establish the bounds of her ranch property so that she might take measures to protect the land from encroachment by others. We also found that it was nonrecurring and resulted in a benefit to the property which had a useful *344 life beyond the year in which the survey was made. See also Louisiana Land & Exploration Company v. Commissioner,7 T.C. 507, 515 (1946), affd. 161 F.2d 842 (5th Cir. 1947), holding that where an expenditure is nonrecurring in nature and provides benefits over a lengthy period of business operation, it is a capital expenditure rather than a deductible business expense. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, during the years in issue unless otherwise indicated.↩
2. Deductibility under section 212 is not involved because the petitioner is not an individual.↩
3. On brief, petitioner relies upon the primary purpose test but also argues in the alternative that application of the origin-of-the-claim test to the facts in this case would bring an equally favorable result to him.↩
4. In Soelling v. Commissioner,70 T.C. 1052 (1978), we adhered to the decision of the Circuit Court of Appeals in Madden v. Commissioner,514 F.2d 1149↩ (9th Cir. 1975). 5. We have also considered Allen v. Selig,200 F.2d 487 (5th Cir. 1952) and Campbell v. Fields,229 F.2d 197↩ (5th Cir. 1956) and found them factually distinguishable.
6. See Jones Estate v. Commissioner,127 F.2d 231, 232↩ (5th Cir. 1942), wherein the Court of Appeals, in holding that attorney's fees incurred in an action to quiet title, stated in dictum, "[t]he nature of a suit to cancel a cloud upon title to real estate remains constant whether the action be prosecuted at the time, or long after, the acquisition of title. It is a contest involving the ownership of the property itself, and the title to property held for profit is a capital asset."