T.C. Memo. 2005-276


UNITED STATES TAX COURT


STEPHANIE JANE HAUGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21324-03.              Filed November 29, 2005.


<u>Joseph Wetzel</u> and <u>Russell A. Sandor</u>, for petitioner.

<u>Wesley F. McNamara</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined a $203,201 deficiency in petitioner's income tax for 1997.[1]

---

[1] In the notice of deficiency upon which this case is based, respondent also determined a deficiency in petitioner's Federal income tax for 1999.  Petitioner did not challenge respondent's determination for 1999 in this proceeding.

Petitioner held a 99.5-percent partnership interest in O.M. Cook Co. (OMCC), a partnership engaged in the business of grass seed production. In the notice of deficiency, respondent disallowed (1) a $625,000 deduction that OMCC claimed with regard to the settlement of a lawsuit, and (2) an $83,202 deduction that OMCC claimed for legal and professional fees related to the lawsuit. In the lawsuit, which the United States brought to recover unpaid debts incurred by another farming partnership, the United States sought recovery against OMCC's assets and petitioner's nonbusiness assets.

The issue for decision is whether OMCC or petitioner may deduct or must capitalize all or part of the $625,000 settlement payment and the $83,202 payment for legal and professional fees. We hold that OMCC may deduct a portion of each payment and that petitioner must capitalize the remaining portions of both payments.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2] Petitioner resided in Independence, Oregon, when she filed the petition.

---

[2] Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect during the year in issue and Rule references are to the Tax Court Rules of Practice and Procedure.

A.    <u>Owen M. Cook and Cook Farms Partnership</u>

Owen M. Cook (Owen) conducted farming operations in the Willamette Valley of Oregon for many years.  Owen and his wife Mildred had five children.

Owen initially retired from farming in 1972 when he was 62 years old.  Owen then leased his wheat farm to two of his sons, Bob and Byron, who with Byron's wife, Ann, formed a farming partnership known as Cook Farms.  Cook Farms initially was successful and leased or purchased additional land to expand its business.

Cook Farms' business suffered in the latter part of the 1970s because of events beyond its control, such as adverse weather, higher fertilizer costs, and lower wheat prices.  From 1979 to early 1981, Cook Farms (with Bob, Byron, and Ann as coobligors) borrowed nearly $1 million (the farm loans) under programs administered by the U.S. Department of Agriculture (the Agriculture Department).  Cook Farms remained unprofitable, and the farm loans were not repaid as they came due.  By June 1982, the Agriculture Department suggested that Cook Farms, Bob, Byron, and Ann should sell their assets and use the proceeds to repay the farm loans.  In May 1983, Cook Farms offered to pay $5,000 to the Agriculture Department in compromise of the unpaid farm loans.  In a letter to the Agriculture Department dated May 9, 1983, Bob, Byron, and Ann indicated they might file for

bankruptcy under chapter 7 of the Bankruptcy Code if they could not compromise the farm loans. Cooks Farms cooperated with the Agriculture Department in the liquidation process. Most of the delinquent farm loans remained unpaid when the Agriculture Department finished liquidating Cook Farms' assets around 1986.

B.   Stephanie Jane Hauge

Petitioner earned a master's degree in school administration and education and held various full-time positions in the local school system from 1976 through 1987. Petitioner began attending law school in 1987 and received a law degree in 1990.

Petitioner met Owen's son Bob in the summer of 1981. Petitioner and Bob began living together in 1981 and were married in 2001.

C.   Formation of OMCC, Owen's Transfers of Assets to Petitioner, and Petitioner's Real Estate Purchases

On August 30, 1981, Owen and petitioner formed OMCC as a general partnership to produce grass seed. Owen and petitioner each held a 50-percent interest in OMCC. Owen had many years of farming experience, and petitioner handled administrative, record-keeping, and personnel matters. OMCC's articles of co-partnership provided that, if Owen or petitioner died, his or her interest in the partnership would become the sole property of the surviving partner. Bob and Byron have been employees of OMCC since 1982.

OMCC leased all of the land that it farmed. OMCC became highly profitable. By 1997, OMCC farmed approximately 3,800 acres.

Owen suffered a stroke in 1989. Thereafter, he substantially reduced his work on behalf of OMCC. Owen transferred various assets to petitioner in 1989 and 1990. In 1989, he transferred to petitioner a remainder interest in several pieces of real estate that he owned, reserving life interests in those properties for Mildred. On January 1, 1990, Owen transferred to petitioner nearly his entire partnership interest in OMCC, thereby increasing her interest in OMCC from 50 percent to 99.5 percent. Owen died in 1992. At that time, Mildred received Owen's .5-percent interest in OMCC.

Between December 1987 and February 1996, petitioner purchased commercial real estate properties and several large tracts of farm land from third parties. Petitioner leased farm land to OMCC.

D. Farm Loan Lawsuit

1. Proposed Compromise

In October 1990, the Agriculture Department agreed with Cook Farms to settle the outstanding farm loan debt of more than $1.6 million (including accrued interest) in exchange for $75,000 to be remitted in four installments. Cook Farms paid the first installment but did not pay any other installments. As a result,

the Agriculture Department revoked the settlement agreement and reinstated the full amount of the farm loan debt. Cook Farms made no further attempts to repay the farm loan debt.

2. The Lawsuit

On February 5, 1996, the United States, acting through the Agriculture Department (hereinafter the Government), filed a complaint against Bob, Byron, Ann, and Cook Farms in the United States District Court for the District of Oregon (the farm loan lawsuit). United States v. Cook, No. CV96-172-RE (D. Or.). As stated in the complaint, the Government sought a judgment that Bob, Byron, Ann, and Cook Farms were obliged to repay the full amount of the farm loan debt with interest.

On September 13, 1996, the Government filed an amended complaint naming petitioner as a defendant to the farm loan lawsuit and expanding its legal theories for recovery. The amended complaint included additional counts titled "Conspiracy", "False Claims Act", "Fraudulent Conveyance", and "Unjust Enrichment". The Government alleged: (a) Bob and Byron were secret partners in OMCC; (b) Owen and petitioner conspired with Bob and Byron to defraud and hinder the Government in its efforts to collect the unpaid farm loans by organizing OMCC and holding all business and personal assets in the names of OMCC or petitioner; (c) Bob and Byron made false statements to the Government by failing to disclose their partnership interests in

OMCC and other real property interests; (d) Bob, Byron, Owen, and petitioner fraudulently conveyed certain assets and used OMCC's ongoing business operations to conceal Bob's and Byron's interests in OMCC; and (e) all the defendants were unjustly enriched by the foregoing actions.  The Government requested, inter alia, that the District Court:  (a) Enter an order setting aside the alleged fraudulent conveyances of property involving OMCC and directing an accounting of Bob's and Byron's interests in OMCC; and (b) impose a constructive trust on all the defendants' property to the extent of their unjust enrichment or the interest of the United States.  Petitioner filed an answer and affirmative defenses denying that she had engaged in the alleged conspiracy or any fraudulent conveyances.

On April 9, 1997, the District Court granted partial summary judgment for the Government on count I and held that Bob, Byron, Ann, and Cook Farms were liable for the full amount of unpaid farm loans, plus interest.

On June 16, 1997, the Government filed a second amended complaint.  In it OMCC was not named as a defendant, but the Government requested that the District Court enter a judgment against petitioner and OMCC, jointly and severally, for the full amount of the farm loan debt.

E.    Effect of the Lawsuit on the Business Reputation of OMCC and Petitioner

Before the Government filed the farm loan lawsuit, the Agriculture Department conducted an investigation in an effort to identify all assets owned by Bob, Byron, Ann, petitioner, and OMCC.  During the investigation and the ensuing litigation, the Government issued numerous subpoenas to various individuals and businesses in the Willamette Valley farming community.  The investigation resulted in adverse publicity for petitioner and OMCC.  During that time, two landowners terminated land leases with OMCC, and an equipment dealer stopped selling farm equipment to OMCC.  During 1997, 1998, and 1999, OMCC's gross receipts from farming were $1,414,767, $1,085,209, and $837,388, respectively.

F.    Settlement Agreement

On December 19, 1997, the Government entered into a settlement with OMCC and all of the defendants in the farm loan lawsuit.  In the settlement:  (1) The parties agreed that petitioner would cause to be paid to the United States the sum of $625,000 within 120 days; (2) the Government released the defendants and OMCC, and the defendants and OMCC released the Government, from all civil claims, demands, rights, and causes of action of whatever kind related to the subject of the action; (3) the parties agreed that (a) nothing in the agreement was an admission of any liability or wrongdoing by any party or person released herein, all of which parties and persons thereby

expressly denied fault and liability; (b) the agreement was a release and settlement of disputed claims; (c) the payment was provided solely to buy peaceful continued business operations for petitioner and to avoid further litigation; and (d) nothing in the agreement was a release of any claim against the defendants under the Internal Revenue Code; (4) the Government agreed not to criminally prosecute the defendants, to refrain from any further investigation of the claims raised in the lawsuit, and to release claims for suspension or debarment by the Agriculture Department against the defendants and OMCC; and (5) Bob, Byron, Ann, and Cook Farms stipulated that they had no interest in petitioner's property or assets or in OMCC.

G.   Payment of the Settlement and Legal and Professional Fees

On December 23, 1997, petitioner and Mildred, as general partners of OMCC with a 99.5- and a .5-percent interest, respectively, each signed and submitted to The Commercial Bank (the bank) written authorization for OMCC to borrow up to $1 million.  On December 23, 1997, petitioner and OMCC, identified in the loan documents as coborrowers, borrowed $550,000 from the bank.  As security for this loan, petitioner, as grantor, transferred to the bank a deed of trust on her residence.  In addition to the loan described above, OMCC borrowed $75,000 from the bank pursuant to a line of credit.  Late in December 1997,

petitioner caused $625,000 to be electronically transferred to the Government as required under the settlement agreement.

During 1997, OMCC paid a total of $83,202 in legal and professional fees related to the farm loan litigation to two law firms: Donaldson, Albert, Tweet, Connolly, Hanna, & Muniz (Donaldson, Albert) and Stewart, Sokol & Gray (Stewart, Sokol). Donaldson, Albert billed OMCC, whereas Stewart, Sokol billed petitioner. During 1997, OMCC paid $26,584.16 to Donaldson, Albert and $56,617.84 to Stewart, Sokol.

## H. OMCC's and Petitioner's 1997 Tax Returns and the Notice of Deficiency

On its Form 1065, U.S. Partnership Return of Income, for 1997, OMCC deducted, inter alia, $625,000 for "litigation" and $87,490 for "legal and professional". OMCC reported a net farm loss for 1997 of $354,477 and that petitioner made a $25,876 capital contribution to the partnership during 1997.

OMCC issued to petitioner and Mildred separate Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for 1997. OMCC allocated ordinary losses of $352,705 to petitioner and $1,772 to Mildred. On her Form 1040, U.S. Individual Income Tax Return, for 1997, petitioner reported net farm rental income of $195,298, offset by the $352,705 partnership loss allocated to her by OMCC, resulting in a loss of $127,997 for the year.

OPINION

A.    Contentions of the Parties

Petitioner individually, and as a 99.5-percent partner of OMCC, contends that either OMCC or petitioner may deduct the $625,000 settlement payment and the $83,202 in legal fees associated with the farm loan litigation because those amounts were paid to protect OMCC's ongoing business operations and its reputation.[3]

Respondent asserts that OMCC may not deduct the $625,000 settlement because, according to respondent, petitioner, not OMCC, made the settlement payment.[4]  Alternatively, respondent contends that neither OMCC nor petitioner may deduct the settlement payment or the legal fees in dispute because those payments were capital expenditures made to defend or perfect petitioner's title to property.  Sec. 1.263(a)-2(c), Income Tax Regs.

---

[3]  Petitioner argues that the burden of proof in this case should be shifted to respondent under sec. 7491(a).  On the basis of the stipulation of facts and the evidence presented at trial, we decide this case according to the preponderance of evidence without regard to the burden of proof.

[4]  Respondent contends petitioner may not argue that she (instead of the partnership) may deduct the settlement payment because that would be a new theory raised for the first time after trial.  We disagree.  Petitioner raised the matter in her petition, which gave respondent fair notice.  See Rule 31(a). Respondent is not prejudiced because whether petitioner may currently deduct or must capitalize the settlement payment does not require the presentation of any new or different evidence.

B.   Whether OMCC or Petitioner Paid the $625,000 Settlement

Respondent contends that petitioner paid the settlement because (1) petitioner provided collateral for the $550,000 loan, and (2) OMCC failed to properly account for the $625,000 as a partnership debt on its books and records.

Bank records show that late in December 1997:  (1) Petitioner and Mildred executed an authorization permitting OMCC to borrow up to $1 million; (2) petitioner and OMCC signed as coborrowers on a bank loan in respect of $550,000 of the $625,000 amount that was paid to the Government; and (3) OMCC obtained the $75,000 balance of the $625,000 settlement payment by borrowing against a line of credit.

We disagree with respondent's assertion that petitioner paid the entire $625,000 settlement.  Although the bank had a right to foreclose on petitioner's property in the event of a default on the $550,000 loan, there is no indication that a default occurred or that petitioner thought it ever would occur.  We also are not persuaded that OMCC's failure to account for the bank loan as a partnership debt shows that petitioner paid the $625,000 settlement.  Although evidence that OMCC failed to properly account for the bank loan in its books and records is relevant to the question whether petitioner or OMCC made the settlement payment, OMCC's book entries are not conclusive on the point. See Estate of Freeman v. Commissioner, T.C. Memo. 1966-42.  In

our view, the fact that OMCC and petitioner jointly borrowed $550,000 of the funds used to pay the settlement is compelling evidence that OMCC and petitioner joined in paying that portion of the settlement.

OMCC was as much a target of the Government's efforts to collect the unpaid farm loans as petitioner. The Government requested that the District Court enter a judgment against OMCC and petitioner, jointly and severally, for the full amount of the unpaid farm loans, and OMCC was a party to the settlement agreement that ended the farm loan litigation.

Considering the claims that the Government made against petitioner and OMCC in the farm loan litigation (discussed in detail below at par. C-2) and the bank loan records identifying petitioner and OMCC as co-borrowers on the $550,000 loan, we conclude that petitioner and OMCC each paid one-half of $550,000 of the $625,000 settlement payment. We also conclude that OMCC paid the remaining $75,000 of the $625,000 settlement payment inasmuch as it borrowed that amount against its own line of credit. Thus, we conclude that petitioner paid $275,000 of the $625,000 settlement payment and that OMCC paid the remaining $350,000.

C. Whether OMCC and Petitioner May Deduct Their Shares of the Settlement Payment

We next consider how much (if any) of its $350,000 payment OMCC may deduct under section 162 or must capitalize, and how

much (if any) of her $275,000 payment petitioner may deduct or must capitalize.

    1.   <u>Principles for Deducting Legal Fees and Expenses Under Sections 162 and 212 and the Origin of the Claim Doctrine</u>

A taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in connection with the operation of the business.  Sec. 162.  Similarly, ordinary and necessary expenses incurred in connection with an activity conducted for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income, are deductible if the taxpayer itemizes his or her deductions.  Sec. 212.  To be deductible under section 162 or 212, an expense must be directly connected with or proximately result from the taxpayer's business or an activity conducted for the production or collection of income.  <u>Kornhauser v. United States</u>, 276 U.S. 145, 153 (1928); <u>Madden v. Commissioner</u>, 514 F.2d 1149, 1150 (9th Cir. 1975), revg. 57 T.C. 513 (1972); <u>Stevens v. Commissioner</u>, T.C. Memo. 1999-259.

Personal, living, and family expenses, on the other hand, generally may not be deducted.  Sec. 262(a).  In addition, expenses that would otherwise be deductible under section 162 or 212 are not currently deductible if they are capital.  Secs. 263, 261, 161; <u>Woodward v. Commissioner</u>, 397 U.S. 572, 575-576 (1970); <u>BHA Enters., Inc. v. Commissioner</u>, 74 T.C. 593, 599 (1980).

Whether legal fees and expenses are deductible under section 162(a) or 212, or nondeductible under section 262(a) or 263, depends on the origin of the underlying claim, not on its potential effects on the fortunes of the taxpayer. See United States v. Gilmore, 372 U.S. 39, 51 (1963) (holding that the taxpayer was not entitled to deduct legal expenses incurred in divorce proceedings in which his spouse sought a share of his controlling interests in three corporations because his spouse's claims stemmed from the marital relationship, not from income-producing activity); see also Woodward v. Commissioner, supra at 577-578; Redwood Empire Sav. & Loan Assn. v. Commissioner, 628 F.2d 516, 520 (9th Cir. 1980), affg. 68 T.C. 960, 976-979 (1977); Madden v. Commissioner, supra at 1151;[5] Reed v. Commissioner, 55 T.C. 32, 39 (1970).

Legal expenses and settlement costs incurred in defending against claims that would injure or destroy a business are ordinary and necessary business expenses. Commissioner v. Heininger, 320 U.S. 467, 471-472 (1943); N. Am. Inv. Co. v. Commissioner, 24 B.T.A. 419, 420 (1931).

Litigation may be rooted in both the defense or perfection of title (nondeductible expenditures) and in the management of a

---

[5] In Madden v. Commissioner, 514 F.2d 1149 (9th Cir. 1975), revg. 57 T.C. 513 (1972), the Court of Appeals for the Ninth Circuit, the court to which an appeal in this case would lie, applied the origin-of-the-claim test to determine whether litigation costs are currently deductible or capital in nature.

property or business (deductible expenditures), and, as a result, an allocation between the two may be appropriate.  DeMink v. United States, 448 F.2d 867, 869 (9th Cir. 1971); see Boagni v. Commissioner, 59 T.C. 708, 713-714.

    2.   Whether the Entire Settlement Payment Must Be Capitalized

Petitioner contends that the $625,000 payment is deductible whether it was paid by her or OMCC.  Respondent contends that the entire payment is a nondeductible capital expense.  We agree with petitioner in part in that we conclude that OMCC may deduct its share of the settlement payment under section 162.  We agree with respondent in part in that we conclude that petitioner must capitalize her share of the settlement payment.

In identifying the origin of the claim that led to the settlement payment, we consider the Government's original and amended complaints in the farm loan litigation and the settlement agreement.  The Government's original complaint was directed at Cook Farms and its partners and sought a judgment requiring them to repay all of the farm loan debt with interest.  In the amended complaint, the Government added petitioner as a defendant and added allegations of conspiracy and fraudulent conveyance.  The Government alleged:  (a) Petitioner had engaged in a conspiracy to hinder and delay the Government's effort to collect the farm loans in that Bob and Byron were secret or dormant partners in OMCC; and (b) Bob, Byron, Owen, and petitioner fraudulently

conveyed certain assets and used OMCC's ongoing business operations to conceal Bob's and Byron's interests in OMCC. The Government filed a second amended complaint requesting that the District Court enter a judgment against petitioner and OMCC, jointly and severally, for all of the farm loan debt.

The Government claimed that petitioner was conspiring with Bob and Byron to use OMCC's farming operations to hide assets that otherwise would have been available to the Government to offset Cook Farms's delinquent farm loans. The Government challenged petitioner's title to real estate that she had acquired with her distributive share of OMCC's earnings. In addition, the Government viewed OMCC's assets as potential sources to repay the farm loans.

The settlement agreement that ended the farm loan litigation reveals that OMCC's interests were taken into account when that action was settled. In particular, the settlement agreement stated that OMCC and the Government released each other from all civil claims related to the subject of the action and that the Government would release claims for suspension or debarment by the Agriculture Department against the defendants and OMCC. The settlement agreement also stated that the settlement payment was intended solely to buy peaceful continued business operation for petitioner and to avoid further litigation.

Against this background, we conclude that OMCC paid its share of the settlement payment to defend against the Government's claims that its current business operations were part of an ongoing conspiracy and that OMCC should be held jointly and severally liable for approximately $2 million due on the unpaid farm loans. OMCC was not named as a defendant in the farm loan litigation. However, the second amended complaint and the settlement agreement clearly show that the Government treated OMCC as fair game in its hunt for assets to repay the delinquent farm loans. The settlement agreement provides that the parties viewed the settlement as a means to ensure that OMCC could continue its farming operations uninhibited by any further litigation or adversarial administrative proceedings at the Agriculture Department.

As previously discussed, legal expenses incurred in defending against claims that a business was being operated fraudulently, i.e., claims that would injure or destroy a business, are ordinary and necessary business expenses and need not be capitalized. See Commissioner v. Heininger, 320 U.S. 467, 470 (1943); Kornhauser v. United States, 276 U.S. at 153; N. Am. Inv. Co. v. Commissioner, 24 B.T.A. at 420. Under these circumstances, we hold that OMCC's payment of $350,000 of the settlement payment was an ordinary and necessary business expense under section 162.

In contrast, we conclude that petitioner may not deduct her $275,000 share of the settlement payment. The Government's allegations in the farm loan litigation regarding the circumstances of the transfer of Cook family assets to petitioner (unlike the allegations relating to Cook Farms) represented a direct attack on her title to real estate and other assets that she had acquired in her own name over the years. Consequently, we conclude that petitioner paid her share of the settlement payment to preserve or protect her title to real estate and other personal assets against the Government's claim that those assets had been fraudulently conveyed to her. Therefore, petitioner must capitalize her share of the settlement payment. See Madden v. Commissioner, 514 F.2d at 1151; Reed v. Commissioner, 55 T.C. at 39-40.

D.   Whether OMCC May Deduct Legal and Professional Fees It Paid in Connection with the Farm Loan Litigation

OMCC paid $83,202 in legal and professional fees in connection with the farm loan litigation. Respondent contends that OMCC may not deduct these legal fees because they were incurred to defend and protect petitioner's title to real estate and, therefore, are capital expenditures.

Our analysis regarding the deductibility of OMCC's share of the settlement payment also applies to the legal and professional fees in dispute. Thus, OMCC may deduct $26,584.16 in legal and professional fees that it incurred defending against the lawsuit

because those expenditures are an ordinary and necessary business expense under section 162. That is the amount of legal fees that Donaldson, Albert billed to OMCC and that OMCC paid to that firm during 1997.

We agree with respondent that OMCC may not deduct the portions of the legal and professional fees that it paid on behalf of petitioner. Stewart, Sokol billed petitioner $56,617.84 for legal fees, and OMCC paid that bill in 1997. Those fees were incurred to protect and defend petitioner's title to real estate and other personal assets that she acquired in her own name over the years. See, e.g., Hood v. Commissioner, 115 T.C. 172 (2000). Petitioner may not currently deduct but must capitalize her share of the legal and professional fees incurred with regard to the lawsuit.

To reflect the foregoing,

Decision will be entered under Rule 155.